**Russell DEAN, Relator,**

v.

**ALLIED AVIATION FUELING COMPANY, Department of Economic Security, Respondents.**

No. C5–85–1731.

Court of Appeals of Minnesota.

Feb. 11, 1986.

James A. Jorgensen, St. Paul, for relator.

Hubert H. Humphrey, III, Atty. Gen., Laura E. Mattson, Sp. Asst. Atty. Gen., St. Paul, for respondents.

Considered and decided by LESLIE, P.J., and PARKER and CRIPPEN, JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

Relator appeals by writ of certiorari from a determination that he was discharged for misconduct. We affirm.

## FACTS

Relator Russell Dean was employed by the respondent, Allied Aviation Fueling Co., (Allied) as a skycap from July 1983 through April 4, 1985. Skycaps assist some airline travelers by bringing their luggage to the appropriate ticket counters, and assist other passengers who already have tickets by preparing baggage claim checks. Each passenger is allowed to check three pieces of luggage and carry one bag on the airplane. When checking baggage, Dean was responsible for ascertaining that each passenger had a ticket and counting the number of bags or parcels belonging to that passenger. If the passenger had excess baggage, Dean was required to escort him or her to the appropriate ticket agent for payment of an additional fee prior to completing the checking process. Allied's Policy and Procedures Manual required that skycaps request and verify each passenger's ticket, that baggage be counted accurately, and that excess baggage be reported to the airline. Failure to report excess baggage to the airline constituted cause for immediate discharge without progressive discipline. Dean was aware of these rules.

Following an incident on March 23, 1985, Dean was discharged for attempting to check excess baggage without notifying the airline. He applied for unemployment compensation, and a claims deputy determined that he was disqualified from receiving benefits. Dean appealed, and a hearing was held before a Department referee. At the hearing, Dean testified that on March 23, 1985, while he was on duty, a vehicle arrived at the airport terminal entrance at approximately 12:00 noon. Two women and a man exited the vehicle, and the man asked for Dean's assistance. Dean asked what airline the group was flying on and how many were in the group. The man responded that there were five of them flying on Midway Airlines.

Dean proceeded to unload a large quantity of luggage and boxes, and the man drove off to park the car. When Dean asked to see the travelers' tickets, one of the women held out five ticket jackets. Dean checked inside only one of the jackets, found a valid ticket, and thereupon

made out 15 claim checks, stapling them all to that ticket. The two women signed the 15 checks. There were five pieces of luggage remaining, two of which the women said they intended to carry on the airplane. The man who had previously driven off to park the car then returned, and asked Dean how much he owed him. Dean believed the three remaining pieces could be taped together, and informed the man that he could reduce the excess baggage to one piece. He filled out three more claim checks for those pieces, and obtained the man's signature on all three. He then asked the man to meet him at the Midway Airline's counter so that the excess baggage charge could be paid.

Dean finished servicing another separate passenger whom he had been assisting at the same time, and began pushing the group's baggage towards the Midway counter. His supervisor, Darold Short, who had been observing him from a distance, approached and asked Dean how many passengers were in the group. Dean responded that there were five and explained the situation, but when he turned to ask the man for verification, he discovered that the man had disappeared. Dean and Short looked for the passengers at the gate, but were unable to locate them. The passengers did not respond to a page. Dean and his supervisor then returned to the Midway counter to determine what should be done about the baggage. Midway decided to send the baggage through, but to have the bags detained at their destination to see how many passengers would be there to pick them up. Dean therefore made out claim checks for the remaining parcels. When the bags arrived, only one person claimed them. That person was not questioned.

Because Short had not overheard any of Dean's conversations with the group of passengers, he was only able to testify concerning his observations, which generally corresponded with Dean's story. However, Short also testified that when he asked Dean how many passengers were in the group, Dean initially responded "three", but then amended his answer to five.

Allied also entered into evidence a passenger name list (PNL) and a document entitled "Other Service Information" which indicated that one of the three passengers was traveling in a business group. However, neither document indicated how many passengers were in the group, and the PNL listed one of the passengers' names twice.

A representative from Midway testified at the hearing that the airline did not make further inquiries of the passengers because theirs was a "no hassle airline" and the group was representing an employer who was a "pretty big account" of Midway.

After listening to the parties' testimony, the referee determined that Allied had failed to prove Dean had engaged in misconduct. Allied appealed, and a Commissioner's representative reversed, concluding that Dean had violated Allied's excess baggage policy and was guilty of misconduct. Dean has appealed.

## ISSUE

Do the factual findings of the Commissioner's representative support his determination that Dean was discharged for misconduct?

## ANALYSIS

Individuals who are otherwise eligible to receive benefits may be disqualified from receiving them if they are discharged from their employment for misconduct. Minn. Stat. § 268.09, subd. 1(2) (1984). "Misconduct" has been defined by the Minnesota Supreme Court as follows:

[T]he intended meaning of the term 'misconduct' * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and

substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct' * * *.

*Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973) (quoting *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259, 296 N.W. 636, 640 (1941)). An employer must establish by a preponderance of the evidence that an employee was discharged for misconduct. *Lumpkin v. North Central Airline, Inc.*, 296 Minn. 456, 459, 209 N.W.2d 397, 400 (1973).

A decision of the Commissioner that an individual has engaged in misconduct is a legal conclusion upon which this court is free to exercise its independent judgment. *Smith v. Employers' Overload Co.*, 314 N.W.2d 220, 221 (Minn.1981). However, this court is bound by the factual findings of the Commissioner. *Id.* It is the decision of the Commissioner's representative, rather than that of the referee, which must be reviewed. *Chellson v. State Division of Employment and Security*, 214 Minn. 332, 335, 8 N.W.2d 42, 44 (1943).

Judicial review of a decision of the Commissioner's representative is limited:

Where there is any evidence reasonably tending to sustain the findings of the [Commissioner] they will not be disturbed on review.

*Id.* at 336, 8 N.W.2d at 45. Determinations regarding credibility lie particularly within the province of the Commissioner's representative. *Winkler v. Park Refuse Service, Inc.*, 361 N.W.2d 120, 123 (Minn.Ct. App.1985).

Dean challenges the following determinations by the Commissioner's representative:

[T]he employer presented eyewitness testimony and documentary proof that there were only three passengers and twenty items of baggage involved in the incident and that no excess baggage payment had been made; and we found the claimant's explanations to be weak and confused. For example, he testified that two of the items (picture frames) were carry-on items, but none of the three passengers took any carry-on items with them when they left the claimant; and even if they were carry-on items there were still several pieces of excess baggage left. He also claimed that he intended to tape two or three boxes together to make one item, but if so he violated policy by attaching a claim check to each of the 20 items. The claimant also admittedly violated policy by neglecting to check all five ticket jackets and only checked one of them; he violated policy by attaching 15 claim checks to the one ticket that he saw; and he violated policy by giving the passengers their baggage claim stubs before escorting them to a ticket agent for payment of excess baggage charges. The claimant knew the policy and procedure, and his conduct clearly evinced a willful disregard of the employer's interests, constituting misconduct as defined in *Tilseth* * * *.

Dean first argues that Allied's evidence that there were only three passengers in the group was weak. However, even if there had been five passengers in the group, and even if two of the pieces had been intended for carry-on luggage, three pieces would have remained as excess baggage. Further, even if those bags had been taped together, one piece of excess baggage would have remained, which was not checked in accordance with Allied's excess baggage policy.

Dean admits he only looked in one ticket jacket, in violation of Allied's rules. He defends this action by claiming that other skycaps do the same, and that he tried to trust the passengers.

Violation of an employer's rules by other employees is not a valid defense to a claim of misconduct. While Dean's attempt to

trust his fellow human beings may be admirable, his actions were nonetheless in direct contravention of Allied's policy.

 Upon several occasions this court has held that violation of an employer's work rules constitutes misconduct. In *McDonald v. PDQ*, 341 N.W.2d 892 (Minn.Ct. App.1984), an employee was found to be guilty of misconduct when he violated his employer's policy requiring cashiers to ring up sales immediately. The *McDonald* court noted that the PDQ policy "was important to ensure that money was not misplaced or stolen" and held that an employer "has the right to expect scrupulous adherence to procedure by employees handling the employer's money." *Id.* at 893.

Although skycaps do not actually handle the money for excess baggage, their observation of the rule requiring correct counting of baggage and checking of each ticket jacket is important to ensure that the airlines receive proper reimbursement for excess baggage. Allied therefore had the right to expect its skycaps to scrupulously observe that rule.

 On appeal, Dean does not dispute the Commissioner's representative's finding that he violated airline policy by giving the passengers their baggage claim stubs before escorting them to a ticket agent for payment of the excess baggage charge. This further violation of policy, when coupled with his failure to check the ticket jackets, constitutes sufficient misconduct to uphold the Commissioner's representative's denial of benefits.

### DECISION

Dean was aware of Allied's rules requiring skycaps to check each passenger's ticket and to require payment of excess baggage charges before giving passengers their baggage claim stubs. Violation of those rules by Dean constituted misconduct.

Affirmed.