Leif M. SIVERTSON, Relator,

v.

SIMS SECURITY, INC., Commissioner of Jobs and Training, Respondents.

No. CO–85–1670.

Court of Appeals of Minnesota.

July 29, 1986.

Review Denied Aug. 20, 1986.

Leif M. Sivertson, Hastings, pro se.

Mark R. Miller, Hessian, McKasy & Soderberg, Minneapolis, for Sims Sec., Inc.

Hubert H. Humphrey, III, Atty. Gen. Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for Com'r of Jobs and Training.

Considered and decided by POPOVICH, C.J., and WOZNIAK and RANDALL, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

Relator appeals from a determination his actions constituted misconduct disqualifying him from receipt of unemployment compensation benefits. By order October 22, 1985, we discharged certiorari for relator's failure to timely serve the issued writ. The supreme court reversed on April 1, 1986, and remanded to this court for review on the merits. We affirm.

## FACTS

On February 25, 1985, relator Leif Sivertson, a security guard for respondent Sims Security, Inc., was assigned to guard the general office area of the Champion International Paper Company. Although scheduled to work from 4:00 p.m. until midnight, he did not arrive at his post until 4:10 p.m. Approximately one-half hour later, he returned to the guard office, turned in his radio and a report for his shift, and told the guard who was manning the desk he was ill and was going home. The other guard acknowledged Sivertson's statement and telephoned Sims to obtain a replacement. Before the call was completed, Sivertson had left the premises.

Upon learning Sivertson had left his post, his supervisor called him at home and left a message on the telephone answering machine. Sivertson did not return the call until the following day. On March 1 Si-

vertson was discharged for leaving an assignment without being properly relieved.

During the course of two hearings to determine Sivertson's entitlement to unemployment compensation benefits, the parties introduced three separate documents outlining Sims' guard policies. A one-page document dated August 24, 1983, entitled "Guard Policies" states:

> Guards must remain at assigned post until *properly relieved* of duties or emergencies require them elsewhere.

(Emphasis added). This document was acknowledged by Sivertson.

A three-page document entitled "Sims Guard Policies" states:

> An employee leaving his/her assignment without *proper relief* will be immediately discharged.

(Emphasis added). The copy in the file does not contain a date or a signature by Sivertson. Finally, a copy of an "Officer Manual" issued by Sims' parent company states:

> Any of the following are cause for reprimand, suspension and/or dismissal * * *
> 6. Leaving assignment without *proper relief*.

(Emphasis added). For Sivertson to have been "properly relieved," according to his supervisor, he should have telephoned the home office and waited for someone to come and actually replace him.

Sivertson had violated Sims' policies upon at least two previous occasions. In October 1983 he received a warning for leaving a post unattended, and in August 1984 he failed to show up for a scheduled shift, but was "given another chance."

## ISSUES

1. Does the record support the determination Sivertson engaged in misconduct by leaving his assignment without being properly relieved?

2. Is a showing of actual harm to an employer necessary to support a determination of misconduct?

3. Will an employer's selective enforcement of its rules excuse an employee's misconduct?

4. Did Sims fail to follow its own disciplinary procedures?

5. Should the Commissioner's decision be reversed due to referee bias and improper transcription of the record?

6. Has relator stated a claim against the Department for damages?

## ANALYSIS

■ 1. Sivertson claims he did not violate Sims' policy by leaving his post as he did on February 25, because it was a "special assignment" with varying and irregular hours. The Commissioner's representative found the terms of Sims' policy nonetheless required Sivertson to notify his supervisor and be physically relieved by another guard before he left his shift.

There is evidence in the record to support this finding. The terms of Sims' guard policies refer only to "assignment," "assigned post," or "work," and do not distinguish between regular and special assignments. In addition, Sims' personnel manager testified the policies for regular and special assignments were identical. Although the post in question was not always guarded, Sivertson was specifically assigned to that post on February 25 from 4:00 p.m. to midnight. The personnel manager testified Sims is responsible for supplying whatever type of guard service a client requests. Therefore, when Sivertson left early at 4:40 p.m., his employer's policy required he notify his supervisor and be physically replaced by another guard. There was no evidence Sivertson was too ill to call his supervisor and wait for a replacement to arrive.

Sivertson claims he did notify a "supervisor" and obtain authorization to leave, since the other guard at the office was a sergeant and replied "Okay" when Sivertson told him he was leaving. Sivertson argues he completed all necessary paperwork, and the other guard should have told him it was improper to leave.

Although the other guard was a sergeant, he was not the supervisor. The supervisor actually assigned to Sivertson

testified he was the person who scheduled Sivertson for work, scheduled days off, rearranged shifts and took care of problems with Sivertson's shifts. He stated any time there was a problem, Sivertson was to call him.

We have held violation of an employer's policy constitutes misconduct. *See Montgomery v. F & M Marquette National Bank,* 384 N.W.2d 602 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. June 13, 1986); *Dean v. Allied Aviation Fueling Co.,* 381 N.W.2d 80 (Minn.Ct.App.1986); *Ruzynski v. Cub Foods, Inc.,* 378 N.W.2d 660 (Minn. Ct.App.1985). Here, Sivertson violated his employer's policy by leaving his post instead of waiting for a replacement.

■ 2. Sivertson argues even if he did not follow the correct procedures, no harm to Sims actually resulted. Harm is not necessary for a determination of misconduct, which is defined in part as conduct which evidences an "intentional and substantial disregard of the employer's interests." *Tilseth v. Midwest Lumber Co.,* 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (Minn.1973). Sims assumed the responsibility of providing a guard for Champion on February 25 between 4:00 p.m. and midnight. When Sivertson left his post, Sims was unable to fulfill its obligations to Champion until a replacement guard could be found. By leaving Sims in such a position, Sivertson evidenced an intentional and substantial disregard of his employer's interests.

■ 3. Sivertson claims Sims selectively chose to enforce its rules against only him. The sole question before this court is whether Sivertson's violation of Sims' rules constituted misconduct. Whether or not other employees violated those same rules and were disciplined or discharged is not relevant here. *See Dean,* 381 N.W.2d at 83 (an employee's claim that other workers also violate an employer's rules will not excuse the violation of those rules).

■ 4. Sivertson's claim Sims did not follow its own disciplinary procedures is unsupported by the record. No Sims' policy provides a guard should receive successive warnings or other methods of discipline when absent from a post without proper relief. Rather, one of Sims' policies calls for immediate discharge, and another provides for reprimand, suspension and/or dismissal. Sivertson did in fact receive warnings in the past for at least two similar violations.[1]

■ The parties introduced three separate documents containing different statements of Sims' policies. A three-page document entitled "Sims Guard Policies" states:

> Any employee leaving his/her assignment without proper relief will be immediately discharged.

The Commissioner's representative found Sivertson "had been informed of [this] policy and had signed a receipt of a copy of it." Sims' letter to the Department of Jobs and Training states Sivertson did sign a copy; however, the copy attached to Sims' letter is not signed by Sivertson. At the first hearing, Sims' personnel manager testified the signed copy was received during Sivertson's pre-employment orientation (August 1983) and was witnessed by George Koplan [sic]. At the second hearing, the personnel manager introduced a one-page document signed by Sivertson, dated August 24, 1983 and witnessed by George Copeland. That document is entitled "Guard Policies", and states: "Guards must remain at assigned post until properly relieved of duties or emergencies require them elsewhere."

We must defer to factual findings by the Commissioner's representative which are reasonably supported by the record. *Cary v. Custom Coach, Inc.,* 349 N.W.2d 331, 332 (Minn.Ct.App.1984). Here, the Commissioner's representative's finding is erroneous since the record demonstrates Sivertson received and signed the one-page document rather than the three-page document. This error is harmless, however, since both exhibits require a guard must

---

1. Sivertson's brief contains an explanation for these prior incidents which was not presented to the referee. This new evidence may not be considered on appeal. *See Jaakola v. Duluth/Superior Area Educational Television Corp.,* 374 N.W.2d 215, 217 (Minn.Ct.App.1985).

remain at an assignment until properly relieved. Sivertson was aware he should not leave his assignment until he was replaced.

5. Sivertson also claims the referee was biased against him and interrupted him during the hearing. A review of the record discloses no bias. The referee interrupted Sivertson only for procedurally valid reasons, such as repetitive questioning of witnesses and testifying when Sivertson should have been cross-examining. Sivertson's claim the transcripts are hearsay and invalid does not merit discussion. The two hearings were recorded pursuant to statutory authority, Minn. Stat. § 268.10, subd. 6 (1984), and the transcripts have been certified by the reporter as correct.

6. Sivertson alleges a claim against the department for damages in the amount of $100,000, due to "bureaucratic harassment, restraint of trade, interference with business opportunity, and for inconvenience and pain and suffering * * *." Such claim, if cognizible at law, should be raised in an independent civil action. It is not appropriate here.

### DECISION
The decision of the Commissioner finding relator engaged in misconduct is affirmed.

Affirmed.