*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-1302**

Jayne M. Eiden-Kellam, petitioner,
Relator,

vs.

Mayo Clinic Health System – Fairmont,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed March 9, 2015**
**Affirmed**
**Kirk, Judge**

Department of Employment and Economic Development
File No. 32374349-3

Jayne M. Eiden-Kellam, Welcome, Minnesota (pro se relator)

Mayo Clinic Health System – Fairmont, Rochester, Minnesota (respondent)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Ross, Presiding Judge; Kirk, Judge; and Reilly, Judge.

UNPUBLISHED OPINION

**KIRK**, Judge

Relator appeals the decision of the unemployment-law judge (ULJ) that she was ineligible for unemployment benefits because she was discharged for employment misconduct. We affirm.

**FACTS**

Relator Jayne M. Eiden-Kellam worked full-time at respondent Mayo Clinic Health System – Fairmont as a customer-service representative from January 6, 1998, until she was discharged on February 27, 2014. Eiden-Kellam applied for unemployment benefits following her discharge and a Minnesota Department of Employment and Economic Development (DEED) administrative clerk determined that Eiden-Kellam was ineligible for unemployment benefits. Eiden-Kellam appealed the determination and a ULJ held an evidentiary hearing.

At the hearing, a Mayo Clinic human-resources representative testified that employees of the Mayo Clinic's privacy and compliance offices discovered during a compliance audit that Eiden-Kellam had accessed a patient's electronic file and viewed the patient's protected health information on one occasion in January 2014. The human-resources representative testified that she met with Eiden-Kellam to find out whether she had actually accessed the patient's confidential information, and Eiden-Kellam admitted that she had. Eiden-Kellam explained that she recognized the patient's name and accessed the patient's record to see where the patient lived. The human-resources representative testified that Eiden-Kellam had received training about patient

confidentiality and HIPAA confidentiality standards at the time she was hired as well as ongoing annual training. The Mayo Clinic discharged Eiden-Kellam due to the confidentiality breach.

Eiden-Kellam testified that she accessed the patient's electronic file because she recognized the patient's name and wanted to see the current town where the patient lived. She testified that she was "not real sure" why she accessed the information, but that she never intended to share the information with anyone. She testified that it was a mistake and she only viewed the patient's electronic record for three to six seconds.

The ULJ issued an order determining that Eiden-Kellam was ineligible for unemployment benefits because the Mayo Clinic discharged her for employment misconduct. Eiden-Kellam requested reconsideration and the ULJ affirmed his decision. This certiorari appeal follows.

## DECISION

When reviewing a ULJ's eligibility decision, this court may affirm, remand for further proceedings, or reverse or modify the decision if the substantial rights of the relator have been prejudiced because the findings, inferences, conclusion, or decision are affected by an error of law or are unsupported by substantial evidence. Minn. Stat. § 268.105, subd. 7(d) (2014). We view the ULJ's factual findings in the light most favorable to the decision and defer to the ULJ's credibility determinations. *Peterson v. Nw. Airlines Inc.*, 753 N.W.2d 771, 774 (Minn. App. 2008), *review denied* (Minn. Oct. 1, 2008). "[T]his court will not disturb the ULJ's factual findings when the evidence substantially sustains them." *Id.*

3

Eiden-Kellam challenges the ULJ's decision that she is ineligible for unemployment benefits because she was discharged for employment misconduct. An employee who was discharged is eligible for unemployment benefits unless the discharge was for employment misconduct. Minn. Stat. § 268.095, subd. 4(1) (2014). "Employment misconduct" is "any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." *Id.*, subd. 6(a) (2014). "Whether an employee committed employment misconduct is a mixed question of fact and law." *Peterson*, 753 N.W.2d at 774. Whether the employee committed the act is a fact question. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). But whether the employee's act constitutes employment misconduct is a question of law, which we review de novo. *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011).

In general, an employee's refusal to abide by an employer's reasonable policies and requests constitutes employment misconduct. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002). In the health-care context, this court has recognized that maintaining the confidentiality of patient records in a hospital is very important. *Grp. Health Plan, Inc. v. Lopez*, 341 N.W.2d 294, 297 (Minn. App. 1983). In *Grp. Health Plan*, this court concluded that because "[a] hospital has the right to expect its employees to keep patient records confidential . . . a violation of patient records confidentiality is misconduct." *Id.*

4

Eiden-Kellam admits that she received training about the Mayo Clinic's confidentiality policy and the requirements of HIPAA and that she violated those policies when she viewed a patient's protected health information. But she contends that the Mayo Clinic routinely violates HIPAA. In support of her assertion, she submitted photographs of the Mayo Clinic's alleged HIPAA violations to this court. But the focus of an employment misconduct "inquiry is the employee's conduct, not that of the employer." *Stagg*, 796 N.W.2d at 316. And whether other employees have violated or continue to violate HIPAA is not relevant to our consideration of whether Eiden-Kellam committed employment misconduct. *See Sivertson v. Sims Sec., Inc.*, 390 N.W.2d 868, 871 (Minn. App. 1986) ("Whether or not other employees violated those same rules and were disciplined or discharged is not relevant here."), *review denied* (Minn. Aug. 20, 1986); *Dean v. Allied Aviation Fueling Co.*, 381 N.W.2d 80, 83 (Minn. App. 1986) ("Violation of an employer's rules by other employees is not a valid defense to a claim of misconduct.").

Eiden-Kellam also argues that her discharge from her employment after only one HIPAA violation was a pretext because the Mayo Clinic was trying to downsize her department. She contends that the Mayo Clinic should have given her a written warning instead of discharging her. If an employee disputes the reason for her discharge, the ULJ must allow her to present evidence of the competing reasons for the discharge and then must make factual findings on the cause of the discharge. *Scheunemann v. Radisson S. Hotel*, 562 N.W.2d 32, 34 (Minn. App. 1997).

Here, there is nothing in the record to support Eiden-Kellam's claim that she was discharged because the Mayo Clinic was downsizing her department. The record further shows that Eiden-Kellam never presented this argument to the ULJ or submitted any evidence to the ULJ in support of the argument. *See Eisenschenk v. Eisenschenk*, 668 N.W.2d 235, 243 (Minn. App. 2003), *review denied* (Minn. Nov. 25, 2003) ("[A] party cannot complain about a district court's failure to rule in [the party's] favor when one of the reasons it did not do so is because that party failed to provide the district court with the evidence that would allow the district court to fully address the question."). And although the evidence in the record shows that Eiden-Kellam violated the Mayo Clinic's confidentiality policy on only one occasion, it is well-established that "[a] single incident can constitute misconduct when an employee deliberately chooses a course of conduct that is adverse to the employer." *Schmidgall*, 644 N.W.2d at 806. Finally, there is no equity in the award of unemployment benefits, and we do not consider whether an employee should have been discharged because our sole consideration is whether the employee is entitled to unemployment benefits. *See* Minn. Stat. § 268.069, subd. 3 (2014); *Auger v. Gillete Co.*, 303 N.W.2d 255, 257 (Minn. 1981).

Therefore, we conclude that the ULJ did not err by determining that Eiden-Kellam is ineligible for unemployment benefits because she committed employment misconduct.

**Affirmed.**