*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0430**

Kimberly G. Baker,
Relator,

vs.

Minnesota State Supreme Court,
Respondent,

Department of Employment and Economic Development,
Respondent

**Filed January 11, 2016
Affirmed
Worke, Judge**

Department of Employment and Economic Development
File No. 32658231-3

Kimberly G. Baker, South St. Paul, Minnesota (pro se relator)

Carla J. Heyl, State Court Administrator's Office, St. Paul, Minnesota (for respondent Minnesota Supreme Court)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Worke, Presiding Judge; Reilly, Judge; and Reyes, Judge.

UNPUBLISHED OPINION

**WORKE**, Judge

Relator challenges the determination of an unemployment-law judge (ULJ) that she committed employment misconduct by violating her employer's internet and electronic communication policy. We affirm.

**FACTS**

In December 1985, respondent Minnesota State Supreme Court hired relator Kimberly G. Baker. Baker, an assistant appellate clerk, helped process documentation submitted for cases filed in the Minnesota Supreme Court and the Minnesota Court of Appeals. Baker assisted appellate attorneys and law clerks, checked trial court files, and helped locate missing documents. Baker's employee email contained a signature block in which she identified herself as an assistant clerk of courts for the Minnesota Supreme Court and the Minnesota Court of Appeals.[1]

In 1998, the Minnesota Judicial Branch enacted Policy 317, which governs the use of internet and technology before, during, and after work hours by Judicial Branch employees. Under that policy, employees must adhere to the highest ethical standards when using the internet and other electronic communication tools. Employees can access

---

[1] Baker's signature block stated:

Kimberly Baker
Assistant Clerk of Courts
Minnesota Supreme Court
Minnesota Court of Appeals

Policy 317 anytime by visiting an employee intranet site, and employees receive email notifications when policies are updated.

Appropriate use under Policy 317 includes use that does not interfere with work activities. Inappropriate use includes, but is not limited to, (1) wagering, betting, selling, (2) commercial activities, e.g. personal for-profit business activities, (3) uses that are disruptive or harmful to the reputation or business of the Judicial Branch, and (4) purposes other than Judicial Branch business, except limited and reasonable personal use.

In May 2014, AnnMarie O'Neill, the clerk of appellate courts, became concerned with Baker's productivity after noticing a large cart containing unopened mail outside Baker's work station. O'Neill found court envelopes that contained receipts from the United States Postal Service for printing labels at Baker's work station. O'Neill found appellate shipping labels that were used for personal business. The ink used to print the labels was paid for by the court. O'Neill previously observed Baker, on numerous occasions, using the internet while she was supposed to be working. O'Neill verbally warned Baker approximately 10 times about her excessive internet use.

O'Neill asked human resources to monitor Baker's internet usage. Sarah Kujawski, the human resources manager, and the Information Technology Division (IT) located Baker's internet history dating back to January 2013. Kujawski and IT monitored Baker's internet usage and confirmed that Baker used the internet during work to access non-work related websites such as eBay, Amazon, PayPal, Quibids, and a website for the United States Postal Service.

In June 2014, Baker was discharged for violating Policy 317. Respondent Minnesota Department of Employment and Economic Development (DEED) determined Baker ineligible for unemployment benefits because she was discharged for employment misconduct. Baker appealed and in August 2014, an evidentiary hearing was held before a ULJ.

During the hearing, Baker admitted to visiting numerous websites for personal use. Baker testified that she was not aware of Policy 317, and that using her employee email for personal business was not prohibited. Baker claimed that other employees used eBay, printed from court computers, and used court postage for personal reasons. Baker did not know if court policies were emailed to employees, but she admitted that the court administrator "sends out some things." When asked whether she accessed the employee intranet site to view policies, Baker responded, "I don't know if I have or not. I'm sure that I probably have used it but I don't know exactly what is on there or why I went to it."

In December 2014, a ULJ affirmed Baker's ineligibility and concluded that Baker committed employment misconduct. Baker requested reconsideration, and the ULJ affirmed the findings of fact and decision. This appeal follows.

**D E C I S I O N**

This court may affirm, remand, or reverse or modify the ULJ's decision if Baker's substantial rights may have been prejudiced because the findings, inferences, conclusion, or decision are unsupported by substantial evidence in view of the entire record. Minn. Stat. § 268.105, subd. 7(d)(5) (Supp. 2015). An employee discharged for employment misconduct is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 4(1)

4

(2014). "Employment misconduct means any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." *Id.*, subd. 6(a)(1)–(2) (2014).

"Whether an employee committed employment misconduct is a mixed question of fact and law." *Peterson v. Nw. Airlines Inc.*, 753 N.W.2d 771, 774 (Minn. App. 2008), *review denied* (Minn. Oct. 1, 2008). Whether an employee committed a particular act is a question of fact that this court reviews "in the light most favorable to the [ULJ's] decision." *Id.* Whether that act constitutes employment misconduct is a question of law, which this court reviews de novo. *Id.*

### *Factual findings and decision*

Baker argues that the ULJ's factual findings and decision are not supported by substantial evidence. A ULJ's factual findings shall not be disturbed when the evidence substantially supports them. Minn. Stat. § 268.105, subd. 7(d)(5). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Carter v. Olmsted Cty. Hous. & Redevelopment Auth.*, 574 N.W.2d 725, 730 (Minn. App. 1998) (quotation omitted). This standard requires "more than a scintilla of evidence, 'some' evidence, or 'any' evidence." *Id.*

The ULJ found that: (1) Baker repeatedly used her employer's telecommunication system to engage in selling activity and personal business as far back as October 2013; and (2) Baker spent a substantial amount of time on personal websites outside of authorized break times. The evidence substantially supports the ULJ's findings.

Baker used her employee email to engage in selling activities on multiple occasions. In November 2013, Baker sent numerous emails and offered to sell a product to D.T. D.T. accepted Baker's offer and provided his credit card information after Baker requested it. In January 2014, Baker exchanged numerous emails with a relative and instructed her to send a product to L.H. Baker's relative asked whether she should have the payment sent to Baker, and Baker responded, "Yes, please." In March 2014, Baker agreed to sell D.T. another product. Baker requested D.T.'s credit card information and D.T. complied.

In September 2013, eBay informed Baker that they were removing a listing that she created due to concerns that the listing was of poor quality or inauthentic. The email from eBay identified Baker by her employee email. In November 2013, Baker used her employee email to communicate with J.L. regarding registration for a potential business opportunity. Baker stated, "How would you like me to do my coach purses? They are totally legitimate, and I sell them for half price."

Baker also used her employee email to communicate with K.A., an individual to whom she sold a speaker on eBay. K.A. experienced problems with the speaker, and Baker instructed her to not tell the manufacturer that she bought the speaker on eBay because the manufacturer might not honor its warranty. In December 2013, Baker repeatedly used her employee email to interact with D.K. about a potential business opportunity. Therefore, the evidence substantially supports the ULJ's factual finding that Baker engaged in selling activity and personal business.

Baker also spent a substantial amount of time accessing personal websites during work hours. Baker visited PayPal for personal banking. Baker visited the Amazon website and received notifications relating to selling items on the website. Baker spent a substantial amount of time on Quibids, eBay, and USPS. Baker often spent over an hour on personal websites during work. O'Neill and Kujawski testified that Baker received numerous warnings about excessive internet use during work. Therefore, the ULJ's factual finding that Baker spent a substantial amount of time on personal websites outside of authorized break times is supported by substantial evidence.

*Employment misconduct*

Baker argues that she did not commit employment misconduct. "An employer has a right to expect that its employees will abide by reasonable instructions and directions." *Vargas v. Nw. Area Found.*, 673 N.W.2d 200, 206 (Minn. App. 2004), *review denied* (Minn. Mar. 30, 2004). "[W]hat is reasonable will vary according to the circumstances of each case." *Id.* (quotation omitted). A knowing violation of an employer's policies is employment misconduct because it demonstrates a willful disregard of the employer's interests. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 806–07 (Minn. 2002).

Baker spent a considerable amount of time during work on websites for personal business. Baker engaged in selling activities and gathered credit card information on multiple occasions while using her employee email. Baker also used her employee email to instruct K.A. to lie to a speaker manufacturer. Finally, Baker provided eBay and Amazon with her employee email, resulting in numerous notifications that related to

7

selling activities. Policy 317 specifically prohibits employees from engaging in "selling," "personal for-profit business activities," and personal use that is not "limited and reasonable." Therefore, the ULJ's factual findings support the conclusion that Baker committed employment misconduct.

Baker argues that she did not commit employment misconduct because she did not know of Policy 317. This argument presents a question of credibility. "Credibility determinations are the exclusive province of the ULJ and will not be disturbed on appeal." *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 345 (Minn. App. 2006). The ULJ found that Baker's claim was not credible because of inconsistencies in her testimony and the evidence and because she appeared evasive in response to certain questions. Further, O'Neill testified that employees may access Policy 317 on the employee intranet site and that employees receive emails alerting them to policy updates.

Separate from the ULJ's credibility determination (to which we defer), Minn. Stat. § 268.095, subd. 6(a)(1)–(2), defines "employment misconduct" as "any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly . . . a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or . . . a substantial lack of concern for the employment." Misconduct need not be deliberate. *See Barstow v. Honeywell, Inc.*, 396 N.W.2d 714, 716 (Minn. App. 1986) (stating that misconduct need not be deliberate). Thus, Baker's argument that she did not commit employment misconduct because she did not know of Policy 317 is unpersuasive.

Baker also argues that she should have received a written warning about her internet and email use. We are not persuaded. Prior receipt of a written warning is not required to conclude that an employee committed employment misconduct. *See Auger v. Gillette Co.*, 303 N.W.2d 255, 257 (Minn. 1981) (stating that a warning was not essential to demonstrate that employees acted in willful disregard of employer's interest). Moreover, Baker received approximately 10 verbal warnings on her excessive internet use.

Baker finally argues that she did not commit misconduct because other employees used the internet and employee email for personal business. Again, we are not persuaded. Baker's argument does not create a valid defense to a claim of employment misconduct. *See Sivertson v. Sims Sec., Inc.*, 390 N.W.2d 868, 871 (Minn. App. 1986) ("Whether or not other employees violated those same rules and were disciplined or discharged is not relevant here."), *review denied* (Minn. Aug. 20, 1986); *Dean v. Allied Aviation Fueling Co.*, 381 N.W.2d 80, 83 (Minn. App. 1986) ("Violation of an employer's rules by other employees is not a valid defense to a claim of misconduct.").

Therefore, the ULJ did not err in concluding that Baker is ineligible for unemployment benefits because she committed employment misconduct.

**Affirmed.**