*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1518**

Sharon M. Nash,
Relator,

vs.

Douglas Animal Hospital, Inc.,
Respondent,
Department of Employment and Economic Development,
Respondent.

**Filed May 23, 2016
Reversed
Stauber, Judge**

Department of Employment and Economic Development
File No. 33635442-3

Sharon M. Nash, Coon Rapids, Minnesota (pro se relator)

Michael C. Glover, Kalina, Wills, Gisvold & Clark, Minneapolis, Minnesota (for respondent employer)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent Department)

        Considered and decided by Reilly, Presiding Judge; Connolly, Judge; and Stauber, Judge.

**UNPUBLISHED OPINION**

**STAUBER**, Judge

Relator challenges the determination that she was discharged for employment misconduct, arguing that her statement that a pet owner could waive a pet vaccination should not have disqualified her from receiving unemployment benefits. Because relator's statement constituted an isolated minor policy infraction, relator was eligible to receive unemployment benefits. We therefore reverse.

**FACTS**

Relator Sharon Nash was employed by Respondent Douglas Animal Hospital, Inc. (DAH) as a veterinarian technician from February 11, 2015 to May 9, 2015. On May 9, the 89th day of Nash's 90-day probationary period, hospital manager Melissa Wimsett claims to have overheard Nash suggesting to a client that it was not necessary to have the client's dog vaccinated for the leptospirosis bacteria. Nash was discharged from her employment within an hour because her statement to the client violated Dr. Heather Douglas's veterinary protocol for pet vaccinations and violated DAH's policy that veterinary technicians may advise clients only under the direction of Dr. Douglas.

Nash sought unemployment benefits and was found eligible. DAH appealed, and the case was heard by an unemployment law judge (ULJ). At the hearing, Wimsett testified on behalf of DAH, although no evidence of her qualifications to testify about veterinary science matters was offered.[1] She stated that Nash

_____

[1] Wimsett's June 18, 2015 letter to respondent Minnesota Department of Employment and Economic Development (DEED) is signed "Melissa Wimsett, MBA."

advised a client that the leptospirosis vaccination was not needed for their pets and our hospital protocol says otherwise. The decision to tell a client that a vaccine is not needed is only to be made with direction of a veterinarian. She did not do such and therefore violated our hospital vaccine policy.

Wimsett further testified that the leptospirosis bacteria "is spread in standing water by wildlife" and can be passed from infected pets to humans. Wimsett also said that the Minnesota Veterinary Medical Board mandates that only veterinarians may give veterinary advice and that veterinary employees may do so only under the direction of a veterinarian. Wimsett conceded that it is part of a technician's duty to "go into exam rooms and discuss vaccines." The ULJ asked Wimsett whether it is a common practice for a veterinary technician to explain the risks of vaccines to clients, and she answered, "It depends on the type of vaccine. If the client asks, absolutely." Wimsett testified that Nash was aware of this policy.

During her testimony, Nash vehemently denied advising any client that the leptospirosis vaccine was unnecessary. She stated that it was her job to explain to clients vaccines that are offered at DAH and why they are given. She stated that she educated clients on the source of leptospirosis and identified which dogs are most at risk. She also said that, after clients receive this information, they must decide whether to accept or decline a particular vaccine. She also explained that "[m]any clients . . . are averse to having lots of different vaccines on the same day," and that "this specific vaccine is not required like [the] rabies [vaccine] would be required, and is more specifically used for dogs who would have access to stagnant water and wildlife." In materials sent to DEED,

3

Nash said that she had 25 years of experience as a veterinary technician. Nash also testified that "it's not up to me to decide if [the leptospirosis vaccine is] needed or not."

After making credibility findings in favor of Wimsett, the ULJ determined that Nash had told a client that the client's dog did not need the leptospirosis vaccine and that this action constituted employment misconduct. The ULJ noted that, even though Nash was discharged for a single incident of misconduct, her "behavior [was] sufficiently serious to rise to the level of employment misconduct." On Nash's motion for reconsideration, the ULJ affirmed its decision. This certiorari appeal followed.

## D E C I S I O N

This court may affirm, remand, or reverse or modify the ULJ's decision if relator's substantial rights were prejudiced because the findings, inferences, conclusion, or decision are unsupported by substantial evidence in view of the entire record. Minn. Stat. § 268.105, subd. 7(d)(5) (Supp. 2015). An employee discharged for employment misconduct is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2014). "Employment misconduct means any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." *Id.*, subd. 6(a)(1)–(2) (2014). Whether an employee committed employment misconduct presents a mixed question of law and fact. *Peterson v. Nw. Airlines Inc.*, 753 N.W.2d 771, 774 (Minn. App. 2008), *review denied* (Minn. Oct. 1, 2008). Whether an employee committed a particular act is a question of fact, which this court reviews "in the light most favorable to the [ULJ's]

4

decision." *Id.* Whether that act constitutes employment misconduct is a question of law, which this court reviews de novo. *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011).

"An employer has a right to expect that its employees will abide by reasonable instructions and directions." *Vargas v. Nw. Area Found.*, 673 N.W.2d 200, 206 (Minn. App. 2004), *review denied* (Minn. Mar. 30, 2004). "[W]hat is reasonable will vary according to the circumstances of each case." *Id.* (quotation omitted). "As a general rule, refusing to abide by an employer's reasonable policies and requests amounts to disqualifying misconduct." *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002).

## I.     Credibility Determinations

Contrary to the facts found by the ULJ, relator argues that Wimsett never overheard her "violat[e] [the] vaccination protocol," and that she was told at the time of her discharge only that her position was being terminated. But "[c]redibility determinations are the exclusive province of the ULJ and will not be disturbed on appeal." *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 345 (Minn. App. 2006).

Wimsett testified that she overheard relator giving her opinion on whether a client should vaccinate her dog; relator denied making any such statement. Wimsett also explained, contrary to relator's assertion that she was told at the time of her discharge only that her position was being eliminated, that relator "had asked for the reason why she was discharged and then interrupted Dr. Douglas by saying that she must have done something really awful. At which point there was no further conversation . . . ." Wimsett

5

testified that if relator had requested a reason for the discharge, "we could have easily provided that to [her]." The ULJ gave reasons for crediting Wimsett's testimony, including that Wimsett's testimony was "detailed and specific, and described the more likely series of events." The ULJ also gave reasons for not crediting relator's testimony, including that relator's testimony was "self-serving" and "less plausible." On this record, we have no grounds for reversing the ULJ's credibility determinations.

## II.     Single-Incident Factor

The unemployment statute requires a ULJ to consider whether an employee's conduct arose from a single incident in determining whether the conduct amounted to misconduct for purposes of the employee's entitlement to unemployment compensation. Minn. Stat. § 268.095, subd. 6(c) (2014).[2] Specifically, the statute provides: "If the conduct for which the applicant was discharged involved only a single incident, that is an important fact that must be considered in deciding whether the conduct rises to the level of employment misconduct . . . ." *Id.*

DAH had a policy that required technicians to follow "Wellness and Vaccination Protocols" for dogs. Dr. Douglas implemented a lengthy protocol of required annual procedures and vaccines for dogs, including annual dog teeth cleaning after the age of two. The protocol for the leptospirosis vaccine for dogs is "[l]epto combo annually for all breeds." For dogs seven months to six years of age, DAH's full protocol includes:

- Wellness exam annually

---

[2] The unemployment compensation statute formerly included a more strongly worded single-incident exception for misconduct dismissals, but was amended in 2009 to the present version. 2009 Minn. Laws ch. 15, § 9, at 47-48.

6

- Microchip
- DA2PP annually, then every 3 years
- Lepto combo annually for all breeds
- Lyme annually
- Bordetella annually
- Rabies annually, then every 3 years
- Fecal annually
- Deworming annually
- 4Dx annually
- Heartworm prevention monthly year-round
- Flea/Tick prevention monthly year round with Frontline or oral Merial product
- Dental cleaning at 2 years of age, then annually.

The ULJ found that relator's statement to the client "seriously violated the employer's reasonable expectations." But the record clearly shows that it was relator's job to introduce and explain to clients the vaccines used by Dr. Douglas and the reasons for giving them, and that relator's statement may have amounted to only a minor unintentional infraction. Even Wimsett conceded that it was part of a technician's duty to "go into exam rooms and discuss vaccines."

The record does not include facts to support the basis for requiring a dog to be given the leptospirosis vaccine. Under Minnesota law, the only vaccine mandated for dogs is the rabies vaccine. Minn. Stat. § 346.51 (2014) ("An owner or custodian of a dog which does not have an appropriate antirabies vaccination and which bites or otherwise exposes a person to rabies virus may be penalized under section 346.53 [petty misdemeanor]."). And DAH has not provided evidence, statutory or otherwise, requiring annual leptospirosis vaccinations. But in the June 18, 2015 letter to DEED, Wimsett stated that relator's conduct amounted to "tremendous negligence" that left Douglas

7

"liable," and was contrary to a DAH policy that was "mandated by applicable law." With regard to legally mandated vaccines, this statement is unsupported. The fact that the leptospirosis vaccine is not statutorily required undercuts Wimsett's testimony regarding the seriousness of relator's conduct.

Wimsett also made a passing reference in her testimony to a Minnesota Veterinary Board mandate that only veterinarians may give veterinary advice, but the record does not show that relator violated this mandate. Wimsett, who has no apparent training in veterinary science, could not and did not testify to establish what acts constitute giving veterinary advice. Yet the record includes the letter signed by Wimsett, in which she states without citation that "[t]he Minnesota Veterinary Board Practice Act is very clear that only a licensed veterinarian may diagnose, treat or prescribe." There is no evidence that relator's comments constitute "diagnosing, treating, or prescribing."

Relator was discharged on the 89th day of her probationary period, and within an hour of discussing a vaccine with a client. Because DAH failed to offer any evidence to establish the scientific or statutory basis for requiring the leptospirosis vaccine, we can only conclude that relator's single incident of suggesting that a client need not vaccinate her dog was not sufficiently adverse to DAH's interests to constitute employment misconduct. *See Pierce v. DiMa Corp.*, 721 N.W.2d 627, 630 (Minn. App. 2006) (ruling as a matter of law that an employee's single instance of violating employer's cash-register policy did not constitute employment misconduct when there was no evidence that the employee's act had a significant adverse impact on the employer). On this record, we also cannot conclude that relator's comment was ill-conceived or even

8

contrary to DAH's business interests.  Because we reverse, we decline to address relator's argument that her conduct was excused under the good-faith exception to the unemployment statute.

**Reversed.**