*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0009**

Sheila Fangel,
Relator,

vs.

Health Partners, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed August 15, 2016
Affirmed
Kalitowski, Judge***

Department of Employment and Economic Development
File No. 33902009-3

Sheila Fangel, Mendota Heights, Minnesota (pro se relator)

Health Partners, Inc., Bloomington, Minnesota (respondent)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Bjorkman, Presiding Judge; Kirk, Judge; and Kalitowski, Judge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**KALITOWSKI**, Judge

Pro se relator Sheila Fangel challenges an unemployment-law judge's (ULJ) decision that she is ineligible for unemployment benefits because she was discharged for employment misconduct. We affirm.

**DECISION**

Fangel was employed by respondent Health Partners Inc. as a licensed practical nurse for over 25 years. On September 1, 2015, Health Partners terminated Fangel's employment based in part on her failure to document patient encounters. Fangel sought unemployment benefits, and respondent Minnesota Department of Employment and Economic Development (DEED) determined that Fangel is ineligible for unemployment benefits because she was discharged for employment misconduct. Fangel appealed, and a ULJ issued a decision that Fangel's failure to document patient visits constituted employment misconduct and that she is therefore ineligible to receive unemployment benefits. The ULJ affirmed the decision after Fangel requested reconsideration.

When reviewing a ULJ's decision, we may affirm or remand for further proceedings, or we may reverse or modify if the relator's substantial rights were prejudiced because the findings, inferences, conclusion, or decision are affected by an error of law or are unsupported by substantial evidence. Minn. Stat. § 268.105, subd. 7(d) (Supp. 2015). An employee who is discharged because of employment misconduct is ineligible to receive unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2014). "Employment misconduct" includes "any intentional, negligent, or indifferent conduct, on the job or off

2

the job that displays clearly . . . a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee." *Id.*, subd. 6(a) (2014).

"Whether an employee engaged in conduct that disqualifies the employee from unemployment benefits is a mixed question of fact and law." *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011) (quotation omitted). "[W]hether the employee committed a particular act is an issue of fact." *Icenhower v. Total Auto., Inc.*, 845 N.W.2d 849, 855 (Minn. App. 2014) (quotation omitted), *review denied* (Minn. July 15, 2014). We "review the ULJ's factual findings in the light most favorable to the decision" and will "not disturb those findings as long as there is evidence in the record that reasonably tends to sustain them." *Stagg,* 796 N.W.2d at 315 (quotation omitted). "Determining whether a particular act constitutes disqualifying misconduct is a question of law that [appellate courts] review de novo." *Id.*

On appeal, Fangel does not argue that the ULJ's factual findings are unsupported by the evidence. The ULJ found that, in July 2013, Fangel failed to document an injection that she administered to a patient and later failed to administer an injection to the same patient as ordered by the provider. The ULJ found that, in August 2013, Fangel was placed on a three-day unpaid suspension and received a written warning for her failure to document and complete nursing responsibilities. In addition, the ULJ found that, in June 2015, Fangel received a written warning and was placed on a 12-day unpaid suspension for excessive absences and alleged falsification of her timecard. The ULJ further found that, in July 2015, Fangel received a verbal coaching from her supervisor, Kathryn Carlson, after Fangel failed to document a non-stress test that she administered as part of a patient's

3

"well baby visit." And the ULJ found that, in August 2015, Fangel again failed to document a non-stress test. The ULJ found that Fangel was discharged for, among other things, her failure to properly document patient visits and treatment.

At the evidentiary hearing before the ULJ, Fangel admitted that she failed to document an injection she administered to a patient in July 2013 and received a three-day unpaid suspension as a consequence. Fangel also admitted that she had received a 12-day unpaid suspension in June 2015. And Fangel admitted that she failed to document a non-stress test in July 2015 and received a verbal coaching. Carlson testified that Fangel failed to document a non-stress test in August 2015 and that, when she asked Fangel if Fangel documented the test, Fangel responded, "I don't see where I did." Fangel testified that "[m]aybe" it was possible that she failed to document the non-stress test in August 2015. In addition to the testimony, the record includes Health Partners' written warnings to Fangel, which indicated that additional performance-related issues might result in discipline up to and including discharge. And Health Partners' termination letter to Fangel stated that she was being discharged in part based on her failure to document patient encounters, despite her prior warnings and suspensions. We conclude that substantial evidence in the record supports the ULJ's findings.

Fangel appears to argue that the ULJ erred by determining that her actions constituted employment misconduct. As to her 12-day unpaid suspension in June 2015 for excessive absences and timecard falsification, Fangel contends that her absences were approved and that she was never approached by Health Partners to correct the error in her timecard. And as to a number of personal phone calls that Health Partners alleged Fangel

4

made at the nurse station after being coached not to do so, Fangel contends that all of her calls were made during breaks. But the ULJ did not find that Fangel's absences were excessive, that Fangel falsified her timecard, or that Fangel made or received phone calls at the nurse station. Nor did the ULJ determine that Fangel's absences, false timecard, or phone calls constituted employment misconduct. Rather, the ULJ concluded that Fangel's failure to document and perform injections in July 2013 and that Fangel's failures to document non-stress tests in July and August 2015 constituted employment misconduct.

Regarding her failure to document the injection in July 2013, Fangel argues that "[n]o harm was done to the patient" and that she has "documentation of other nurses not documenting [i]njections." As to her failure to document the non-stress tests, Fangel argues that many nurses and providers forget to administer and document testing. But "[h]arm is not necessary for a determination of misconduct." *Sivertson v. Sims Sec., Inc.*, 390 N.W.2d 868, 871 (Minn. App. 1986), *review denied* (Minn. Aug. 20, 1986). And we have stated that "[v]iolation of an employer's rules by other employees is not a valid defense to a claim of misconduct." *Dean v. Allied Aviation Fueling Co.*, 381 N.W.2d 80, 83 (Minn. App. 1986); *see also Sivertson*, 390 N.W.2d at 871 (stating that "[w]hether or not other employees violated [employer's] rules and were disciplined or discharged is not relevant here" and that "[t]he sole question before this court is whether [relator]'s violation of [employer's] rules constituted misconduct").

"Employment misconduct" includes "any intentional, negligent, or indifferent conduct, on or off the job that displays clearly . . . a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee." Minn. Stat.

5

§ 268.095, subd. 6(a). "Because the nature of an employer's interest will vary depending upon the job, what constitutes disregard of that interest, and therefore misconduct, will also vary." *Schmidgall v. Filmtec Corp.*, 644 N.W.2d 801, 806 (Minn. 2002) (quotation omitted). "As a general rule, refusing to abide by an employer's reasonable policies and requests amounts to disqualifying misconduct." *Id.* at 804. This is especially true in the medical field, where "strict compliance with protocol and militarylike discipline is required." *Ress v. Abbott Nw. Hosp., Inc.*, 448 N.W.2d 519, 525 (Minn. 1989).

Carlson testified that documentation of treatment is necessary to inform hospital employees why the patient came to the hospital and that a test was performed. She also testified that failure to document treatment is "not common." And Carlson testified: "[I]ts basic nursing skills that I would think would be in place, that you know that you have to document in a timely fashion so that other people have access to that information. Not only for the mom but also for the baby." Health Partners had a reasonable interest in requiring documentation of patient visits and testing. *Cf. id.* (stating that "[hospital] had a right to expect [relator], an experienced nurse, to operate in emergency situations within the scope of his nursing license according to established procedures prepared to handle those situations" and that "[b]reach of these necessary standards could expose the patient to serious harm and expose [hospital] to malpractice claims: both legitimate interests of the employer").

"[A]n employee's decision to violate knowingly a reasonable policy of the employer is misconduct. This is particularly true when there are multiple violations of the same rule involving warnings or progressive discipline." *Schmidgall*, 644 N.W.2d at 806–07 (citation

6

omitted). Here, Fangel's actions included multiple failures to document patient visits and treatment, and she received written and verbal warnings and a suspension for her failures to document. Because Fangel knowingly violated Health Partners' reasonable policy requiring documentation of patient visits and treatment, we conclude that the ULJ did not err by determining that Fangel is ineligible to receive unemployment benefits.

**Affirmed.**