*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1705**

Cassandra Tart,
Relator,

vs.

American Indian Community Development Corp.,
Respondent,
Department of Employment and Economic Development,
Respondent.

**Filed June 8, 2015
Affirmed
Stauber, Judge**

Department of Employment and Economic Development
File No. 32637205-3

Peter B. Knapp, Benjamin Harper, Certified Student Attorney, William Mitchell Law Clinic, St. Paul, Minnesota (for relator)

Kevin R. Coan, Jessica L. Nelson, Hinshaw & Culbertson, L.L.P., Minneapolis, Minnesota (for respondent American Indian Community Development Corp.)

Lee B. Nelson, Munazza Humayun, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent Department)

Considered and decided by Stauber, Presiding Judge; Bjorkman, Judge; and Rodenberg, Judge.

UNPUBLISHED OPINION

**STAUBER**, Judge

On certiorari appeal from the unemployment law judge's (ULJ) decision that relator was ineligible for unemployment benefits because she was discharged for employment misconduct based on tardiness and early departures, relator argues that (1) the ULJ's decision is not supported by the record and (2) the ULJ failed to fully develop the record with respect to relator's depression and illness. We affirm.

## FACTS

In April 2002, relator Cassandra Tart began working for respondent American Indian Community Development Corporation (AICDC). Relator's attendance issues began in 2010. She was "written up" and "spoken to" about these issues several times between 2010 and 2012. In 2014, however, her attendance issues "escalated." Between February 2, 2014, and April 1, 2014, relator was late for work and/or left work early 21 times. Relator was on FMLA leave from April 7 through May 5, 2014, during which time she was permitted to take leave as needed to deal with her depression. But after her FMLA leave ended on May 5, relator's attendance problems continued, and between May 6 and May 25, 2014, relator was late for work four times.

Relator received written warnings for her attendance problems on March 17, 2014, April 8, 2014, and April 16, 2014, and she signed the warnings on April 23, 2014. The warnings stated that relator's "behavior demonstrates an unacceptable pattern in work performance" and that "[d]iscipline and/or immediate discharge from employment will occur if the described behaviors continues." Despite the warnings, however, relator's

attendance issues did not improve. As a result, AICDC discharged relator from employment on May 30, 2014, due to her "tardies and leaving early."

Relator applied for unemployment benefits with respondent Minnesota Department of Employment and Economic Development (department), and a department administrative clerk determined that relator was eligible for benefits because she was discharged for reasons other than employment misconduct. AICDC appealed that determination and, following a de novo hearing, the ULJ found that relator was either late for work or left work early 24 times between February and May 2014. The ULJ also found that relator was "generally late for work because she failed to catch her bus," and that she "generally left work early to catch her bus." The ULJ concluded that relator "demonstrated a substantial lack of concern for [her] employment because an employee who cared about continuing her employment would ensure that she reported for work on time after repeated warnings." Thus, the ULJ concluded that relator was ineligible for benefits because she was discharged for employment misconduct. Relator then requested reconsideration and the ULJ affirmed. This certiorari appeal followed.

## D E C I S I O N

When reviewing a ULJ's eligibility decision, we may affirm, remand for further proceedings, or reverse or modify the decision if the substantial rights of the relator have been prejudiced because the findings, inferences, conclusion, or decision are affected by an error of law or are unsupported by substantial evidence. Minn. Stat. § 268.105, subd. 7(d) (2014). We view the ULJ's factual findings in the light most favorable to the decision and defer to the ULJ's credibility determinations. *Peterson v. Nw. Airlines Inc.*,

3

753 N.W.2d 771, 774 (Minn. App. 2008), *review denied* (Minn. Oct. 1, 2008). "[T]his court will not disturb the ULJ's factual findings when the evidence substantially sustains them." *Id.*

## I.

An employee who was discharged is eligible for unemployment benefits unless the discharge was for employment misconduct. Minn. Stat. § 268.095, subd. 4(1) (2014). "Employment misconduct" is "any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." *Id.,* subd. 6(a) (2014). "Whether an employee committed employment misconduct is a mixed question of fact and law." *Peterson*, 753 N.W.2d at 774. Whether the employee committed the act is a fact question. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006). But whether the employee's act constitutes employment misconduct is a question of law, which is reviewed de novo. *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011).

An employer has the right to expect an employee to work when scheduled. *Smith v. Am. Indian Chem. Dependency Diversion Project*, 343 N.W.2d 43, 45 (Minn. App. 1984). A pattern of tardiness may constitute employment misconduct, even if it is not deliberate or willful. *Stagg*, 796 N.W.2d at 317 (employee discharged for excessive absenteeism and tardiness committed employment misconduct).

Here, relator challenges the ULJ's decision that she was discharged for employment misconduct. Specifically, she argues that the following findings are not

4

supported by substantial evidence: (1) that relator arrived at her job late and left early because of the bus schedule; (2) that relator was required to obtain permission from a nurse to leave early and she did not obtain that permission; and (3) that relator's behavior did not improve after repeated warnings. We disagree.

The record reflects that when the ULJ asked relator why she was "punching out before [her shift] was over," relator replied that she "was just trying to catch a bus." And relator admitted that she was sometimes late for work because she missed her bus. Moreover, when asked why she would miss the bus, relator replied that she was "[j]ust not getting there on time." Finally, the representative from AICDC testified that relator's explanation to her supervisor for why she was leaving early and arriving late was "primarily" to "catch a bus." Thus, the record supports the ULJ's finding that relator arrived at her job late and left early because of the bus schedule.

The record also supports the finding that relator was required to obtain permission to leave early and that she failed to do so. AICDC's representative testified that if an employee wants to leave early, the "nurse that [is] on duty" needs to "sign[] off" on a "permission form." The representative also testified that relator failed to get permission from the nurse on the days she left early. Although relator disputes the representative's testimony, the ULJ specifically found AICDC's representative to be credible, and we defer the ULJ's credibility determination. *See Peterson*, 753 N.W.2d at 774.

Finally, despite relator's argument to the contrary, the record supports the ULJ's finding that relator's behavior did not improve after "repeated warnings." AICDC's representative testified that "warning statements began in 2010." "[Relator] had two

5

warning statements in 2010, two warning statements in 2012, a warning statement in 2013, and then four warning statements in 2014." The record also reflects that despite the warnings, relator continued to consistently be late for work and leave work early. Accordingly, the record supports the ULJ's decision that relator was ineligible for unemployment benefits because she was discharged for employment misconduct.

**II.**

A ULJ "must exercise control over the hearing procedure in a manner that protects the parties' rights to a fair hearing." Minn. R. 3310.2921 (Supp. 2014). A hearing is generally considered fair if both parties are afforded the opportunity to give statements, examine and cross-examine witnesses, and offer and object to exhibits. *See Ywswf v. Teleplan Wireless Servs., Inc.*, 726 N.W.2d 525, 529-30 (Minn. App. 2007). A ULJ should assist all parties in the presentation of evidence and ensure that all relevant facts are clearly and fully developed. Minn. R. 3310.2921.

Relator argues that the ULJ abused his discretion by "failing to take the testimony of [relator's] treating physician or otherwise develop the record after [relator] made it clear to the ULJ that her mental state contributed to her work performance." But the record reflects that at the beginning of the hearing, the ULJ called three numbers and left two messages in an attempt to contact relator's witness, Dr. Helen Kim. At the end of the hearing, the ULJ again attempted to contact Dr. Kim, but was unsuccessful. At that point, the ULJ determined that Dr. Kim's testimony was unnecessary. The ULJ's decision was not an abuse of discretion because relator admitted that (1) she repeatedly arrived at work late and left work early due to issues with catching a bus and (2) Dr. Kim

6

was apparently only going to testify as to the reasons relator was absent and, therefore, Dr. Kim's testimony would add nothing "regarding [her] late punch-ins or [her] early departure[s]." *See Icenhower v. Total Auto., Inc.*, 845 N.W.2d 849, 855 (Minn. App. 2014) (concluding that the ULJ did not abuse her discretion by denying relator's subpoena requests when the ULJ had sufficient evidence from the testimony, affidavit, and exhibits already submitted to make her decision), *review denied* (Minn. July 15, 2014).

Moreover, the record reflects that the ULJ fully developed the record with respect to relator's depression and illness. As stated above, relator admitted that her habit of leaving work early was premised solely on her desire to "catch a bus." She also admitted that when she was late for work, it was usually because she missed the bus. In fact, the ULJ asked her specifically if there was "anything that prevented her" from catching a certain bus, and she replied "[n]o, no." And the ULJ followed up that question by asking relator "[o]kay, so any other reasons you would have been late besides missing that bus," to which relator also replied "[n]o, no." Relator never claimed that her depression or an illness caused her to be late for work or prompted her to leave early. Nonetheless, the record reflects that the ULJ specifically asked relator about her FMLA leave, her depression and anxiety, and how these illnesses affected her employment. And the representative for AICDC testified that the employer did not take into account relator's tardiness during her time on FMLA leave. Therefore, no further development of the record was necessary.

**Affirmed.**

7