Gregory S. PETERSON, Relator,

v.

NORTHWEST AIRLINES
INC., Respondent,

Department of Employment and
Economic Development,
Respondent.

No. A07–1704.

Court of Appeals of Minnesota.

Aug. 5, 2008.

Marshall H. Tanick, Stephen H. Parsons, Mansfield, Tanick & Cohen, P.A., Minneapolis, MN, for relator.

Timothy R. Thornton, Max Heerman, Briggs & Morgan, P.A., Minneapolis, MN, for respondent.

Lee B. Nelson, Elizabeth H. Esser, Minnesota Department of Employment and Economic Development, St. Paul, MN, for respondent department.

Considered and decided by HUDSON, Presiding Judge; SCHELLHAS, Judge; and CONNOLLY, Judge.

## OPINION

CONNOLLY, Judge.

Relator Gregory S. Peterson, an airline pilot, filed a claim for unemployment benefits with the Minnesota Department of Employment and Economic Development (DEED) after Northwest Airlines Inc. (NWA) discharged him from employment. A DEED adjudicator initially found that he was qualified for benefits. NWA appealed.[1] Following a de novo evidentiary hearing, an unemployment-law judge (ULJ) found that relator was not qualified for unemployment benefits because he had been fired for employment misconduct as defined by Minn.Stat. § 268.095, subd. 6(a) (2006). Relator requested reconsideration, and the ULJ issued an order affirming his decision. Relator challenges the ULJ's order of affirmation, arguing that (1) he did not commit employment misconduct and (2) even if he did commit employment misconduct, then either the single-incident or chemical-dependency exceptions apply. Id. subds. 6(a), (b). This appeal follows on a writ of certiorari relator obtained under Minn.Stat. § 268.105, subd. 7(a) (2006), and Minn. R. Civ.App. P. 115. We affirm.

## FACTS

Relator was employed by NWA as an airline pilot from August 1995 until his discharge for violating NWA's policy concerning pilot consumption of alcohol on February 23, 2007.[2] Specifically, relator was discharged for violating the "12–hour rule." This rule provides: "[Pilots] are prohibited from drinking alcoholic beverages ... during the 12–hour period immediately prior to ... assignment to reserve or standby status." The 12–hour rule is not contingent on the actual likelihood that a pilot placed on flight reserve status will be called upon to fly.

Relator was assigned to flight reserve status beginning at 4:00 a.m. on July 6, 2006. This meant that, under the 12–hour rule, he was prohibited from consuming any alcohol from 4:00 p.m. on July 5, 2006, until relieved of his flight reserve status. Despite this unambiguous prohibition, relator had a "party" on his boat with 12 friends on July 5, 2006. In his testimony before the ULJ, relator admitted to drinking alcohol "most of the day and into the evening." Relator acknowledges that he should not have been drinking alcohol during this time: "It's a mistake that I made admittedly and I did drink at a period of time that I should not have."

Eventually, a lieutenant for the Hennepin County Sheriff's Water Patrol made contact with relator at 11:06 p.m. on July 5, 2006, while he was on Lake Minnetonka. He was arrested for boating under the influence, with an alcohol concentration of 0.17,[3] and for carrying a pistol with an alcohol concentration of 0.08 or more. He did not report this incident to NWA.

## ISSUES

1. Does an airline pilot whose alcohol consumption violates his employer's policy prohibiting alcohol consumption

---

1. Pursuant to a settlement agreement among NWA, relator, and relator's union, NWA agreed to withdraw its previously submitted opposition brief to relator's unemployment benefits claim.

2. Relator was later rehired under a "Last Chance Agreement" dated October 30, 2007. Relator's current employment status with

NWA is not relevant to our analysis of the legal issues presented in this appeal.

3. Approximately four months before this incident, on March 17, 2006, relator was arrested for DWI. He entered a plea and as part of his sentence was asked to undergo a court-ordered evaluation where he was not diagnosed as chemically dependent.

while on flight reserve status commit employment misconduct?

2. Does the single-incident exception apply when an airline pilot violates his employer's policy prohibiting alcohol consumption while on flight reserve status on one occasion?

3. Does the chemical-dependency exception apply to an airline pilot who has violated his employer's policy prohibiting alcohol consumption while on flight reserve status but has not been diagnosed as chemically dependent?

## ANALYSIS

When reviewing the decision of a ULJ, this court may affirm the decision, remand it for further proceedings, or reverse or modify it if the substantial rights of the relator have been prejudiced because the findings, inferences, conclusion, or decision are "(1) in violation of constitutional provisions; (2) in excess of the statutory authority or jurisdiction of the department; (3) made upon unlawful procedure; (4) affected by other error of law; (5) unsupported by substantial evidence in view of the entire record as submitted; or (6) arbitrary or capricious." Minn.Stat. § 268.105, subd. 7(d) (2006).

Whether an employee committed employment misconduct is a mixed question of fact and law. *Schmidgall v. Film-Tec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002). Whether the employee committed a particular act is a question of fact. *Scheunemann v. Radisson S. Hotel*, 562 N.W.2d 32, 34 (Minn.App.1997). This court views the ULJ's factual findings in the light most favorable to the decision. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn.App.2006). This court also gives deference to the credibility determinations made by the ULJ. *Id.* As a result, this court will not disturb the ULJ's factual findings when the evidence substantially sustains them. Minn.Stat. § 268.105, subd. 7(d). But whether the act committed by the employee constitutes employment misconduct is a question of law, which we review de novo. *Scheunemann*, 562 N.W.2d at 34.

An employee who is discharged for employment misconduct is disqualified from receiving unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2006). Employment misconduct means "any intentional, negligent, or indifferent conduct, on the job or off the job (1) that displays clearly a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee, or (2) that displays clearly a substantial lack of concern for the employment." *Id.*, subd. 6(a) (2006).

There are two statutory exceptions to the definition of employment misconduct that are relevant to this case. The first exception is the single-incident exception, which provides that "a single incident that does not have a significant adverse impact on the employer" is not employment misconduct. *Id.* The second exception is the chemical-dependency exception, which provides: "Conduct that was a direct result of the applicant's chemical dependency is not employment misconduct unless the applicant was previously diagnosed chemically dependent or had treatment for chemical dependency, and since that diagnosis or treatment has failed to make consistent efforts to control the chemical dependency." *Id.*, subd. 6(b).

### I.

We first address relator's argument that his behavior should be excused despite his actions. Relator does not deny that his violation of the 12–hour rule on July 5, 2006, standing alone, constitutes employment misconduct under Minn.Stat. § 268.095, subd. 6(a). We agree. As a

matter of law, we hold that an airline pilot whose alcohol consumption violates his employer's policy prohibiting such alcohol consumption while on flight reserve status commits employment misconduct. An airline has the right to reasonably expect that its pilots will refrain from violating a policy put in place to ensure the safety of the flying public. A pilot's transgression of this policy is a serious violation of the standards of behavior that an airline has the right to reasonably expect of its employees because such a violation endangers the flying public by creating the possibility that an intoxicated pilot may be called on to fly a plane. *See generally Risk v. Eastside Beverage,* 664 N.W.2d 16, 20–22 (Minn.App.2003) (holding that driving while under the influence is employment misconduct even when it does not result in a criminal conviction or the loss of a commercial driver's license).

Additionally, a pilot who knowingly violates his employer's policy prohibiting alcohol consumption while on flight reserve status displays a substantial lack of concern for his employment. When a commercial airline pilot takes the controls of a passenger jet, he literally holds the lives of hundreds of passengers in his hands. These passengers trust the pilot to fly the plane safely. Once on the plane, they have no other choice. A pilot who voluntarily places himself in a position where he cannot perform his most essential job duty because he has consumed alcohol, in direct violation of his employer's policy, shows a substantial lack of concern for his employment as well as an utter contempt for those who have placed their trust in him.

■ Citing *Hoemberg v. Watco Publishers, Inc.,* relator argues that even though his conduct was clearly in violation of NWA's 12–hour rule, his behavior should be· excused because NWA did not comply with its policy for treating pilots who have a chemical or alcohol addiction outlined in its Flight Operations Manual (FOM). 343 N.W.2d 676, 678–79 (Minn.App.1984), *review denied* (Minn. May 15, 1984). This argument is unavailing. Even assuming that NWA did not comply with its treatment policy,[4] NWA's non-compliance would be excused by relator's failure to qualify as a "pre-duty violator." NWA has a policy that provides "limited circumstances for chemically dependent employees, who have violated [NWA's] alcohol or drug rules, to retain employment with [NWA]." But before a pilot can take advantage of this policy, the pilot must qualify as a "pre-duty violator." A "pre-duty violator" is defined as "a pilot who violates [NWA] alcohol or drug rules and is reported to a management employee." The report must occur before "[NWA] has commenced an investigation into a possible 'Rules of Conduct' violation by the pilot." The definition of "pre-duty violator" adds the further qualification that "the person making the report *must be* the pilot himself or herself, a family member, friend, or fellow [NWA] employee." In this case, there is no evidence in the record that relator complied with either of these requirements.[5] When relator's attorney was asked about this issue at oral argument, he suggested that one of relator's family members may have reported him. If true, there is nothing in the record to support that assertion. Moreover, any such report was not made until the middle of December 2006.

**II.**

We next address whether the single-

---

4. The record before this court only contains selected segments from the FOM.

5. The transcript before this court only indicates that relator was enrolled in a treatment program.

incident [6] exception applies. It provides:
Inefficiency, inadvertence, simple unsatisfactory conduct, *a single incident that does not have a significant adverse impact on the employer,* conduct an average reasonable employee would have engaged in under the circumstances, poor performance because of inability or incapacity, good faith errors in judgment if judgment was required, or absence because of illness or injury with proper notice to the employer, are not employment misconduct.

Minn.Stat. § 268.095, subd. 6(a) (emphasis added). Relator argues that the single-incident exception is applicable since "he did not cause any harm, which is the essence of the 'single incident' provision" because he was not actually called upon to fly and did not fly a commercial jet while under the influence of alcohol. Relator does acknowledge that his actions *"could have had an adverse impact, but it did not do so "* in this case.

■ Relator's argument is not persuasive. First, the language of the statute does not require that an incident lead to an actual resulting harm (such as a death) in order to have a significant adverse effect on the employer. As DEED points out, "[t]he fact that [relator] was not called to fly is simply fortuitous." The mere chance that a pilot could have been called on to fly a passenger airplane while intoxicated has a significant adverse impact on NWA. At the very least, there is a loss of trust between relator and NWA that occurred as a result of this incident. *See Skarhus,* 721 N.W.2d at 344 (holding that an employee's single incident of theft had a significant adverse impact on her employer when that act eliminated her employer's ability to entrust her with the essential functions of her job). Like *Skarhus,*

NWA, as a result of relator's actions, could no longer trust that relator would be sober to fly planes when called on to do so. Flying planes is a pilot's most essential job function. Because NWA could no longer trust that relator would be able to carry out his most essential job function, his decision to violate NWA's 12–hour rule, under the reasoning and rationale of this court's opinion in *Skarhus,* has a significant adverse impact on NWA, which justified his discharge.

■ As a matter of law, we hold that the single-incident exception does not apply when an airline pilot's alcohol consumption violates his employer's policy prohibiting such consumption when the pilot is on flight reserve status.

### III.

■ Finally, we address whether the chemical-dependency exception applies and conclude that it does not because relator was not diagnosed as chemically dependent before or after violating the 12–hour rule. The chemical-dependency exception provides: *"Conduct that was a direct result of the applicant's chemical dependency is not employment misconduct* unless the applicant was previously diagnosed chemically dependent or had treatment for chemical dependency, and since that diagnosis or treatment has failed to make consistent efforts to control the chemical dependency." Minn.Stat. § 268.095, subd. 6(b) (emphasis added). Under the language of the statute, relators conduct must be the direct result of his chemical dependency if the chemical-dependency exception is to apply.

■ Relator claims that the chemical-dependency exception applies because his

---

**6.** Because relator's March 17, 2006 DWI arrest did not involve the consumption of alcohol in violation of NWA's 12–hour rule, it is not considered in our analysis here.

violation of the 12–hour rule was a direct result of his chemical dependency. While relator obviously has difficulty consuming alcohol in a responsible manner, this does not mean that he is, per se, chemically dependent. Without citing any legal authority, relator essentially argues that his past actions are sufficient evidence of his chemical dependence. But relator provides no formal diagnosis, or other evidence, that establishes that he is chemically dependent. While there is no statutory definition of chemical dependency, relator's conception of chemical dependency is over-inclusive. As DEED points out, an individual can make mistakes with alcohol or abuse alcohol without being chemically dependent. In this case, relator even testified that he was an alcohol abuser rather than an alcohol-dependent individual. In addition, two chemical-dependency evaluations, one three months before the incident and one six months after the incident, concluded that relator was not chemically dependent.

## DECISION

Because an airline pilot whose alcohol consumption violates his employer's policy prohibiting such consumption while on flight reserve status commits employment misconduct, as defined by Minn.Stat. § 268.095, subd. 6(a) (2006), for the purpose of determining eligibility for unemployment benefits, and because that pilot's alcohol consumption does not fit into either the single-incident or chemical-dependency exception, we affirm the ULJ's order.

**Affirmed.**