*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-2007**

Nancy E. Ristow,
Relator,

vs.

Mental Health Resources, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed June 22, 2015
Affirmed
Halbrooks, Judge**

Department of Employment and Economic Development
File No. 32763557-3

Nancy Ristow, North Branch, Minnesota (pro se relator)

Mental Health Resources, Inc., c/o TALX Employer Services, LLC, St. Louis, Missouri (respondent)

Lee B. Nelson, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent Department of Employment and Economic Development)

Considered and decided by Halbrooks, Presiding Judge; Hooten, Judge; and Reyes, Judge.

UNPUBLISHED OPINION

**HALBROOKS**, Judge

Relator challenges the decision of the unemployment-law judge (ULJ) that she is ineligible for unemployment benefits because she was discharged for employment misconduct, arguing that she did not arrive to work late in June 2014 or falsify her timecard. Relator also asserts that the ULJ unfairly conducted the hearing. We affirm.

## FACTS

Relator Nancy Ristow was employed by respondent Mental Health Resources, Inc., as a billing specialist from July 2005 to July 22, 2014. She had a scheduled start time of 6:00 a.m. Employees reported to management that Ristow was arriving later than 6:00 a.m. After these reports, the senior director of housing personally observed Ristow arrive after 6:00 a.m. on June 18, 19, and 20, 2014. But Ristow indicated on her timecard that she arrived at 6:00 a.m. each day. The employee handbook states, "Falsifying a timecard . . . can be grounds for discipline up to and including termination." On July 22, 2014, Mental Health Resources discharged Ristow for falsifying her timecard.

Ristow applied for unemployment benefits and was found ineligible because she had been discharged for employment misconduct. On appeal, the ULJ conducted a hearing at which three employees and Ristow testified. The vice president of administrative services testified that Ristow's supervisor told her that employees had reported that Ristow was arriving to work late. The vice president also testified that the housing director received similar reports. The housing director testified that two people reported that Ristow was not arriving on time. He testified that he saw Ristow walk into

2

the building at 6:40 a.m. on June 18, at 6:45 a.m. on June 19, and at 6:30 a.m. on June 20. He reported each late arrival to the vice president. Ristow's supervisor testified that one employee reported to her that Ristow was not arriving to work on time.

The ULJ asked the vice president why there was a three-week delay between the submission of the falsified timecard on July 1 and Ristow's discharge from employment on July 22. The vice president responded:

> I was meeting with my direct supervisor . . . to discuss whether or not we felt we had sufficient evidence to consider terminating. . . . We had discussed getting additional corroborating information such as checking our network log-in times with our IT department . . . to check her log-in times with our electronic health records which [Ristow] uses to do lots of parts of her job. So, it took us a couple of weeks to consult with our IT department about whether or not we could check those sorts of details.

Ristow testified that she arrived at 6:00 a.m. on June 18, 19, and 20, and that she did not falsify her timecard. She stated that the housing director had "nothing to do with [her] job. He was . . . not even [in her] department." Ristow challenged an e-mail that the housing director wrote to human resources on July 31, nine days after she was discharged from her employment, that stated that he observed Ristow's late arrivals. The ULJ asked Ristow why the housing director would "lie about what he saw?" Ristow responded, "I don't know, just because . . . they're all managers. They all work together. I have a friend that works there. She would have testified for me, but she's afraid of losing her job." The ULJ asked Ristow about her relationship with the vice president, and Ristow responded, "[S]he wanted me out of there. Maybe because I had been there

3

too long, I don't know. Wanted someone in there that hadn't been there, you know, somebody new."

The ULJ found that the employer's witnesses were more credible than Ristow. The ULJ determined that Ristow had been discharged for employment misconduct and was ineligible for unemployment benefits. Ristow requested that the ULJ reconsider its decision. In response, the ULJ issued an order of affirmation, stating that it "fully considered the request and determined that the decision . . . is factually and legally correct." The ULJ also noted that "[a] credibility determination was made regarding the critical issues in dispute." This certiorari appeal follows.

## D E C I S I O N

The purpose of Minnesota's unemployment-insurance program, codified in chapter 268, is to assist those who are unemployed through no fault of their own. Minn. Stat. § 268.03, subd. 1 (2014); *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011). The chapter is remedial in nature and must be applied in favor of awarding benefits, and any provision precluding receipt of benefits must be narrowly construed. Minn. Stat. § 268.031, subd. 2 (2014). "[E]ntitlement to unemployment benefits must be determined based upon that information available without regard to a burden of proof." Minn. Stat. § 268.069, subd. 2 (2014). "There is no equitable or common law denial or allowance of unemployment benefits." *Id.*, subd. 3 (2014).

We review a ULJ's decision to determine whether a party's substantial rights were prejudiced because the findings, inferences, conclusion, or decision are unsupported by substantial evidence in view of the record as a whole or affected by an error of law.

4

Minn. Stat. § 268.105, subd. 7(d) (2014). An employee who was discharged for employment misconduct is ineligible for unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2014). "Employment misconduct means any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." *Id.*, subd. 6(a) (2014). Whether an employee committed employment misconduct presents a mixed question of law and fact. *Peterson v. Nw. Airlines Inc.*, 753 N.W.2d 771, 774 (Minn. App. 2008), *review denied* (Minn. Oct. 1, 2008). Whether an employee committed a particular act is a question of fact, which we review "in the light most favorable to the [ULJ's] decision." *Id.* Whether that act constitutes employment misconduct is a question of law, which we review de novo. *Id.*

Here, the ULJ found that Ristow had received the handbook on the employer's policies that stated that falsification of a timecard was grounds for discharge. The ULJ found that Ristow arrived to work at 6:40 a.m. on June 18, 6:45 a.m. on June 19, and 6:30 a.m. on June 20, but that she indicated on her timecard that she arrived at 6:00 a.m. each day. The ULJ concluded that this was an intentional, serious violation of the employer's reasonable expectations that constituted employment misconduct.

Ristow and the employer's witnesses provided contradictory testimony regarding when she arrived to work on June 18, 19, and 20. Therefore, in order to determine whether Ristow falsified her timecard and committed employment misconduct, the ULJ's decision rested on a credibility determination. We defer to the ULJ's credibility

5

determinations when (1) the ULJ sets forth a valid reason for crediting or discrediting testimony that may significantly affect the ultimate decision and (2) substantial evidence supports the determinations. *Ywswf v. Teleplan Wireless Servs., Inc.*, 726 N.W.2d 525, 532-33 (Minn. App. 2007); *see also* Minn. Stat. § 268.105, subd. 1a(a) (2014) (providing that the ULJ "must set out the reason for crediting or discrediting that testimony" when the witness's credibility "has a significant effect on the outcome of a decision").

The ULJ stated that the employer's witnesses' testimony was more credible than Ristow's testimony because "[t]he employer's witnesses corroborate each other's testimony and present a highly plausible and logical chain of events that led to Ristow's discharge." This sets forth a valid reason for crediting the testimony of the employer's witnesses. *See Ywswf*, 726 N.W.2d at 532-33.

Substantial evidence also supports the ULJ's credibility determination. The employer's handbook outlines the policy against falsifying timecards, and the vice president testified that Ristow received a copy of the handbook. Employees reported that Ristow was arriving late, and the housing director observed Ristow's late arrivals on June 18, 19, and 20. The housing director testified that he reported the late arrivals to the vice president on the same day that he made the observations. And the housing director later sent an e-mail to the human resources director stating that he observed her arrive at least 30 minutes after her scheduled start time.

Deferring to the ULJ's credibility determinations, we conclude that the ULJ did not err in determining that Ristow falsified her timecard. Ristow is ineligible for unemployment benefits because she committed employment misconduct.

6

**Fairness of ULJ's Hearing**

Ristow argues that the ULJ did not look at the facts carefully and that the ULJ "sided with" the employer's witnesses. Ristow also asserts that the ULJ "kept cutting [her] off and wouldn't let [her] talk." The ULJ "shall ensure that all relevant facts are clearly and fully developed" and "shall exercise control over the hearing procedure in a manner that protects the parties' rights to a fair hearing." *Ywswf*, 726 N.W.2d at 529 (quotations omitted).

The record indicates that the ULJ attempted to gather all the facts, asking Ristow if there was "any other evidence . . . that would support your claim that you were there at 6:00?" Ristow did not offer evidence other than her timecard and her testimony that she had arrived on time. During her own testimony, Ristow began discussing incidents that were irrelevant to the employer's discharge decision, and the ULJ attempted to refocus her testimony. While Ristow may have felt that the ULJ unfairly cut her off, when viewed in context of the hearing, the ULJ was appropriately attempting to keep Ristow focused on the relevant events related to her discharge from employment. Nothing in the record demonstrates that the ULJ conducted an unfair hearing.

**Affirmed.**