*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-1860**

Kim Westrup,
Respondent,

vs.

Ryan Electric of St. Cloud, Inc.,
Relator,

Department of Employment and Economic Development,
Respondent.

**Filed August 3, 2015**
**Affirmed**
**Minge, Judge[*]**

Department of Employment and Economic Development
File No. 32661367-3

Kim Westrup, Eden Valley, Minnesota (pro se respondent)

Kelly S. Hadac, HKM, St. Paul, Minnesota (for relator)

Lee B. Nelson, Munazza Humayun, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Schellhas, Presiding Judge; Reyes, Judge; and Minge, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**MINGE**, Judge

In this certiorari appeal from an unemployment-law judge's (ULJ) decision that respondent-employee is eligible for unemployment benefits, relator-employer argues that the ULJ abused its discretion by refusing to order an additional hearing to receive evidence which is claimed to show that statements made by respondent during the hearing were likely false. We affirm.

## FACTS

Respondent Kim Westrup was employed as an office administrator by relator Ryan Electric of St. Cloud, Inc. from 2009 until June 9, 2014, when her employment was terminated. She applied for unemployment benefits. Respondent Minnesota Department of Employment and Economic Development (DEED) issued a determination of eligibility. Ryan Electric appealed for a determination by a ULJ.

On July 21, 2014, the ULJ held an evidentiary hearing. Ryan Mulliner, the owner of Ryan Electric and Westrup's direct supervisor, testified for Ryan Electric. He stated that Westrup was "very good at her job" and "was always as helpful as you could expect," but that her attitude and demeanor were "less than ideal." He related that on one occasion he had to speak with her about being nicer to a customer after the customer complained, and that after he spoke with her, she was always friendly to the customer. He also stated that in 2012 the company implemented a new scanning procedure and

Westrup was "initially hesitant to follow the procedure." After six months Westrup was fully complying with the procedure, and it has not been an issue since.

Mulliner then testified that Westrup sometimes acted rudely toward other employees. He stated that in September 2013, Ryan Electric hired a new employee, Sue Ergen. Although Mulliner initially intended to have Ergen testify at the hearing, he realized that she would be out of the country on the day of the hearing and "didn't bother rescheduling." As a result Mulliner testified about Westrup and Ergen's working relationship. Westrup and Ergen did not get along well, and Ergen felt that Westrup was unprofessional. On April 6, 2014, Ergen submitted a letter that stated she was resigning because Westrup was difficult to work with. The letter alleged that Westrup had made various inappropriate statements, including that "she was not going to be [Mulliner's] n*gger when [he was] in North Dakota," that sometimes she "[didn't] give a sh*t about Ryan Electric," and several criticisms of the company's business practices. Ryan Electric did not submit the letter as an exhibit, but Mulliner read the entire letter during the hearing. Mulliner convinced Ergen not to resign, and he never spoke with Westrup or issued any warnings concerning the allegations in the letter.

Two months later, Ryan Electric issued a memo announcing a change in company policy. The memo indicated that any questions or concerns should be directed to Mulliner. Westrup approached Mulliner, stating she had a problem with the change and acting in a manner that Mulliner described as "huffy." Mulliner testified that he told her it was not for her to worry about and that Westrup replied "well, fine then, I just won't

3

worry about it" and left the office. This interaction lasted approximately 30 seconds. Mulliner testified that after the interaction "[he] decided you know some things are just, it's just never gonna change and [he] needed to make a change." He decided to discharge Westrup.

Westrup also testified at the hearing. She confirmed that she and Ergen had a difficult working relationship. The ULJ questioned her concerning the allegations made in Ergen's resignation letter. Westrup denied ever telling Ergen that she wasn't "going to be [Mulliner's] n*gger" and that she did not recall ever making the comment, but indicated there was a chance she may have said something to a former employee. Westrup denied ever saying that she did not "give a sh*t about Ryan Electric" or that she was the boss when Mulliner was out of the office. Westrup also testified about the encounter with Mulliner that occurred before her termination and agreed that the discussion ended with her saying "fine then I won't worry about it" and leaving the office.

The ULJ determined that Westrup was discharged for reasons other than employment misconduct and therefore eligible for benefits. The ULJ noted that the parties disagreed about whether Westrup made the statements in Ergen's resignation letter. With no direct testimony from Ergen, the ULJ found Westrup more credible concerning that issue. The ULJ also noted that Westrup's attitude was "less than ideal" and that she did not get along with Ergen. However, the ULJ determined that in determining eligibility for unemployment benefits, Westrup's conduct was "not

4

egregious" and "she did not seriously violate the employer's reasonable expectations or show a lack of concern for the employment."

Ryan Electric requested reconsideration and asked the ULJ to order an additional evidentiary hearing so Ergen could testify and her resignation letter could be submitted as an exhibit. Ryan Electric argued that "[a]t a minimum, the testimony of Ms. Ergen will show that Ms. Westrup's testimony was likely false and that the false evidence had an effect on the outcome of the decision." The ULJ denied Ryan Electric's request for an additional evidentiary hearing. The ULJ concluded that Ergen's testimony was not new evidence but would reiterate what Mulliner had testified to during the hearing and "only confirms that disagreement between the [parties] exists." Ryan Electric appeals.

## D E C I S I O N

When reviewing a ULJ's eligibility determination, we may affirm, remand for further proceedings, or reverse or modify the decision if the substantial rights of the relator have been prejudiced because the findings, inferences, conclusion, or decision are affected by an error of law or are unsupported by substantial evidence. Minn. Stat. § 268.105, subd. 7(d) (2014). We review the ULJ's factual findings in the light most favorable to the decisions and defer to the ULJ's credibility determinations. *Peterson v. Nw. Airlines Inc.*, 753 N.W.2d 771, 774 (Minn. App. 2008), *review denied* (Minn. Oct. 1, 2008). "[T]his court will not disturb the ULJ's factual findings when the evidence substantially sustains them." *Id.*

5

The purpose of chapter 268 is to assist those who are unemployed through no fault of their own. Minn. Stat. § 268.03, subd. 1 (2014). The chapter is remedial in nature and must be applied in favor of awarding benefits, and any provision precluding receipt of benefits must be narrowly construed. Minn. Stat. § 268.031, subd. 2 (2014).

Ryan Electric argues that the ULJ erred by declining to hold an additional evidentiary hearing and requests that we remand the case, ordering another evidentiary hearing limited to receiving testimony and the letter from Ergen.

We defer to a ULJ's decision whether to grant an additional evidentiary hearing and will reverse that decision only if the ULJ abused its discretion. *Vasseei v. Schmitty & Sons Sch. Buses Inc.*, 793 N.W.2d 747, 750 (Minn. App. 2010). The ULJ's discretion is not absolute and "must be exercised within the statutory requirements." *Id.* The relevant statute provides that the ULJ must order an additional evidentiary hearing if a party shows that evidence that was not submitted at the evidentiary hearing: (1) "would likely change the outcome of the decision and there was good cause for not having previously submitted that evidence" or (2) "would show that the evidence that was submitted at the [evidentiary] hearing was likely false and that the likely false evidence had an effect on the outcome of the decision." Minn. Stat. § 268.105, subd. 2(c)(1)-(2) (2014).

The new evidence Ryan Electric offered included the testimony of Ergen and a copy of her resignation letter. Ryan Electric does not argue that there was good cause for not submitting the evidence at the initial hearing. Thus, under the first statutory provision for an additional hearing, we do not consider whether eliminating any diminished

6

persuasiveness of the hearsay nature of Mulliner's testimony would likely change the outcome of the ULJ's decision. The second statutory ground provides for an additional hearing if the new evidence "would show that the evidence that was submitted at the hearing was likely false and that the likely false evidence had an effect on the outcome of the decision." *Id.*, subd. 2(c)(2). The ULJ determined that the new evidence was "merely a summary of what [Ryan Electric] testified to during the hearing" and "only confirms that disagreement between the [parties] exists." The ULJ concluded that the summary did not demonstrate that Westrup's testimony was likely false.

As the ULJ noted, the parties disagree about whether Westrup made the statements in question. Ryan Electric's position is based on Ergen's account. Ergen's proffered testimony would be consistent and cumulative to Mulliner's testimony and the argument Ryan Electric made during the initial hearing. The ULJ was already aware that Ergen and Westrup had conflicting accounts of what happened. At best, direct testimony by Ergen rather than Mulliner's hearsay account might tilt the persuasiveness of the record in favor of Ryan Electric. However, Ryan Electric chose to take its chances with this hearsay evidence. Replacing that hearsay with direct testimony is not the same as demonstrating falsity. We conclude that it was not an abuse of discretion for the ULJ to determine that Ergen's personal testimony on the subject would not show that Westrup's testimony was likely false.

Similarly, it was also within the ULJ's discretion to decide that adding Ergen's actual resignation letter to the record would not establish that Westrup's testimony was

likely false. Although not submitted as an exhibit, Mulliner read Ergen's entire resignation letter into the record during the initial hearing. The ULJ considered the contents and asked Westrup questions based on the allegations made in the letter. Moreover, Ryan Electric's argument that the letter is "a written confirmation of the statements made by Ms. Westrup" does not necessarily change the situation. Ryan Electric's allegations that the statements were made is based entirely on Ergen's account. The letter does not prove that the statements were made, but rather repeats the allegations that were heard and considered by the ULJ during the initial hearing.

Because the ULJ did not abuse its discretion by denying the request for an additional evidentiary hearing, we affirm.

**Affirmed.**