*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0588**

Deborah A. Lindamood,
Relator,

vs.

Volunteer Services of Carlton County, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed December 28, 2015
Affirmed
Halbrooks, Judge**

Department of Employment and Economic Development
File No. 32983511-3

Deborah A. Lindamood, Brookston, Minnesota (pro se relator)

Michele L. Miller, Johnson, Killen & Seiler P.A., Duluth, Minnesota (for respondent
Volunteer Services of Carlton County, Inc.)

Lee B. Nelson, Timothy C. Schepers, Minnesota Department of Employment and
Economic Development, St. Paul, Minnesota (for respondent Department of Employment
and Economic Development)

        Considered and decided by Halbrooks, Presiding Judge; Reyes, Judge; and

Klaphake, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to
Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HALBROOKS**, Judge

Relator challenges the determination by an unemployment-law judge (ULJ) that she is ineligible for unemployment benefits because she was discharged for employment misconduct. We affirm.

**FACTS**

From April 1, 2002, through October 9, 2014, relator Deborah A. Lindamood was employed as a program director by respondent Volunteer Services of Carlton County, Inc. (VSCCI). VSCCI is a nonprofit organization that uses dedicated volunteers to secure and distribute food, clothing, and assistance to people in need in Carlton, Aitkin, and southern St. Louis counties. VSCCI also pays a number of non-volunteer certified nursing assistants (CNAs). VSCCI receives a number of governmental grants and must submit quarterly reports to account for the use of grant monies. Reported volunteer hours are treated as "in-kind" dollars to be matched by grants. Because of this, misreporting hours could have significant repercussions on VSCCI's operations by potentially causing the organization to lose its funding.

Lindamood's duties included maintaining records and gathering information for the reports to grantors. This work involved reviewing and signing volunteer timesheets and tallying the volunteer hours to be included in the quarterly grant reports. Questions about timesheet accuracy first arose in late 2013, when Lindamood was on medical leave. Jill Hatfield, VSCCI's chief executive officer, temporarily took over some of Lindamood's duties and discovered that the hours worked by CNAs were being counted

as volunteer hours. Hatfield confronted Lindamood when she returned from medical leave in December 2013, and Lindamood assured her that any mistakes were inadvertent and that she had stopped including the CNAs' hours in the reports in November 2013.

In August 2014, the Minnesota Attorney General's Office (the AGO) contacted VSCCI and requested records pertaining to the organization's operations. Three VSCCI employees who were preparing material in response to the AGO's request contacted Hatfield and reported that they had found numerous mistakes on timesheets approved by Lindamood. Hatfield testified that she decided to investigate further and compared the next quarterly reports against Lindamood's timesheets. Again, they reflected incorrect volunteer-hour reporting. Despite Lindamood's assertion that mistakes were simple clerical errors, Hatfield concluded that the incorrect reporting could not be dismissed as such because of their previous conversations.

Hatfield terminated Lindamood's employment on October 9, 2014, for grant-reporting fraud. According to Hatfield, after she explained the reason for the termination, Lindamood advised her that she could not be fired because she had been the whistleblower to the AGO. Hatfield nevertheless terminated her employment, claiming that she did not know until then that Lindamood was the person responsible for the AGO's investigation.

Lindamood applied for unemployment benefits and was determined to be eligible. VSCCI appealed, and the ULJ held a hearing at which Lindamood and Hatfield testified. The ULJ concluded that Lindamood was discharged for employee misconduct and is ineligible for benefits. Lindamood filed a request for reconsideration, and the ULJ

3

affirmed the decision, noting that Lindamood repeated arguments that she previously asserted and presented irrelevant evidence.  Lindamood appeals by writ of certiorari.

**D E C I S I O N**

Lindamood argues that, although she made mistakes, those mistakes did not amount to misconduct.  She further asserts that the ULJ failed to take into account her alleged status as a whistleblower when determining that she was properly discharged for misconduct.

We review a ULJ's decision to determine whether a party's substantial rights were prejudiced because the decision is "(1) in violation of constitutional provisions; (2) in excess of the statutory authority or jurisdiction of the department; (3) made upon unlawful procedure; (4) affected by other error of law; (5) unsupported by substantial evidence in view of the entire record as submitted; or (6) arbitrary or capricious."  Minn. Stat. § 268.105, subd. 7(d) (Supp. 2015).  An employee who is discharged for employment misconduct is ineligible for unemployment benefits.  Minn. Stat. § 268.095, subd. 4(1) (2014).

"Employment misconduct means any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment."  *Id.*, subd. 6(a) (2014).  Whether an employee committed employment misconduct presents a mixed question of law and fact.  *Peterson v. Nw. Airlines Inc.*, 753 N.W.2d 771, 774 (Minn. App. 2008), *review denied* (Minn. Oct. 1, 2008).  Whether an employee committed a particular act is a question of

4

fact, which this court reviews "in the light most favorable to the [ULJ's] decision." *Id.* Whether that act constitutes employment misconduct is a question of law, which this court reviews de novo. *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 315 (Minn. 2011).

We note at the outset that there is no dispute that volunteer hours were improperly recorded. Because VSCCI's funding depended on accurate reporting, it was crucial that only the hours of volunteers be counted in the quarterly reports. The ULJ found that Hatfield counseled Lindamood on December 13, 2013, when Hatfield first discovered that the hours worked by CNAs were included in the volunteer hours in Lindamood's reports. But even after Lindamood was warned against improperly including these non-volunteer hours in the reports, Hatfield testified that it occurred again. Hatfield stated that she tallied at least 39 timesheets that incorrectly included CNAs' hours in the reports. Lindamood contends that she "may have, in good faith, committed mistakes," but that "mistakes are not misconduct." She adds that "[s]he never displayed the type of intentional negligent or indifferent conduct which would display a clearly serious violation of the standards of behavior an employer had the right to reasonably expect." But the ULJ concluded that "[m]isreporting hours could have serious negative impacts on those grants, especially in light of the Attorney General's investigation into [VSCCI]" and noted that "Lindamood's reporting of volunteer hours to Hatfield as volunteer hours was a serious violation of the employer's reasonable standards."

Lindamood argues that she was discharged in retaliation after Hatfield discovered that she was a whistleblower to the AGO. In order to determine whether Lindamood was discharged because she was the whistleblower, the ULJ had to make a credibility

5

determination. This court defers to the ULJ's credibility determinations when (1) the ULJ sets forth a valid reason for crediting or discrediting testimony that may significantly affect the ultimate decision and (2) substantial evidence supports the determinations. *Ywswf v. Teleplan Wireless Servs., Inc.*, 726 N.W.2d 525, 529, 532 (Minn. App. 2007); *see also* Minn. Stat. § 268.105, subd. 1a(a) (2014) (providing that the ULJ "must set out the reason for crediting or discrediting that testimony" when the witness's credibility "has a significant effect on the outcome of the decision").

The ULJ determined that Lindamood's assertion that she was discharged for being a whistleblower was not supported by the record. Hatfield testified that while she knew that someone had contacted the AGO, she assumed it was a disgruntled former member of the board of directors and that she did not learn that it was Lindamood until after she had terminated her employment. The ULJ found credible Hatfield's testimony that she was not aware of Lindamood's role in the matter prior to the discharge conversation, stating that "[b]ecause of the detail Hatfield offered regarding her initial suspicions, Hatfield's testimony that she did not know Deborah Lindamood contacted the Attorney General is credible." The ULJ found no facts to support Lindamood's claim and instead found it "more likely, as the employer asserts, that Deborah Lindamood was discharged for allowing multiple employees to report hours worked as volunteer hours, despite having been warned against the same in December 2013."

6

The ULJ's finding that Lindamood incorrectly counted CNAs' hours as volunteer hours on multiple timesheets is supported by the evidence, and the ULJ's determination that the conduct constitutes misconduct is not error.

**Affirmed.**