*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A24-1807**

Ger Xiong,
Relator,

vs.

Quality Extrusion,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed August 18, 2025**
**Affirmed**
**Bentley, Judge**

Department of Employment and Economic Development
File No. 50969633-2

Ger Xiong, Janesville, Minnesota (self-represented relator)

Quality Extrusion, Mankato, Minnesota (respondent employer)

Keri A. Phillips, Katrina Gulstad, Minnesota Department of Employment and Economic
Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Larson, Presiding Judge; Larkin, Judge; and Bentley,

Judge.

**NONPRECEDENTIAL OPINION**

**BENTLEY**, Judge

Relator Ger Xiong challenges the determination of an unemployment-law judge

(ULJ) that Xiong was ineligible for unemployment benefits because he was discharged

from his job for employment misconduct. Because the ULJ's decision is supported by substantial evidence, we affirm.

## FACTS

Xiong worked at Quality Extrusion LLC as a machine operator from May 15, 2024, until his discharge on July 11, 2024. He worked on a small team to "[c]reate polyethylene film rolls and work orders to ship to customers." After Xiong was discharged, he applied for unemployment benefits. His application was denied because respondent Department of Employment and Economic Development determined that he was discharged for employment misconduct and was thus ineligible for benefits. Xiong requested a hearing before a ULJ, which occurred in August 2024. The following summary is based on the testimony and exhibits received at that hearing, as well as the ULJ's decision.

### *Manager's Testimony*

A manager at Quality Extrusion testified as follows. Quality Extrusion expects employees who will be absent or late to call an hour before the shift begins and talk to the supervisor on duty. Xiong repeatedly had issues with attendance, and he consistently called in. Between May 22, 2024, and June 6, 2024, Xiong was absent three times and was two hours late once because of car troubles. He called in each time. And on June 19, 2024, Xiong left an hour and a half into his shift to change his shirt but did not return to work despite the employer's expectation that he would.

On July 2, 2024, Quality Extrusion held a review meeting with Xiong. Xiong was told that Quality Extrusion "needed him here" and that he had "missed a few days already."

2

But the next week, Xiong missed three days of work—July 8, 9, and 10, 2024—because he was in jail.

On July 11, 2024, Quality Extrusion discharged Xiong because of his attendance issues. The manager emphasized that "dependability is very important" to Quality Extrusion, as there are only three to four employees on a shift. He also clarified that the reason for the discharge was not because Xiong was arrested or accused of a crime. Quality Extrusion discharged Xiong because of his tardiness and absence, as Quality Extrusion needs "to have people here."

### Xiong's Testimony

Xiong testified as follows. Xiong believed he was discharged because he was a probationary employee and could be discharged for any reason or no reason. He acknowledged that his discharge might have been related to his attendance, except that he had communicated about his absences and tardiness. He did not dispute that he was late to or missed work on occasions. And he acknowledged that none of his absences were for illness.

Xiong also explained his arrest in July, which caused his final three absences. The details of the arrest are not relevant to the issue on appeal. Each day that Xiong missed work while he was in jail, his girlfriend called in to Quality Extrusion. When Xiong was bailed out, he was ready to go back to work, but a manager called him to say that "they wouldn't need [him] anymore."

3

*ULJ Decision*

After the hearing, the ULJ issued a decision determining that Xiong was ineligible for unemployment benefits because he was discharged for employment misconduct. Specifically, the ULJ determined that Xiong was discharged "due to repeated absences" between May 2024 and July 2024 and that he was not discharged because of his July 2024 arrest. The ULJ explained that it found the manager's testimony credible "because it was based on firsthand knowledge and consistent with documents submitted prior to the hearing." Xiong requested reconsideration of the decision, and the ULJ affirmed.

Xiong appeals by writ of certiorari.

**DECISION**

Xiong challenges the ULJ's determination that he was discharged because of attendance-related employment misconduct and is therefore ineligible for unemployment benefits. He argues that he followed company policy when he was absent or tardy, and that he was discharged for no reason other than that he was a probationary employee. The Department of Employment and Economic Development argues that the ULJ's decision is supported by substantial evidence.

When reviewing a ULJ's decision, we may affirm the decision or remand for further proceedings. Minn. Stat. § 268.105, subd. 7(d) (2024). Alternatively, we may reverse or modify a ULJ's decision if, among other things, the decision is "unsupported by substantial

4

evidence in view of the hearing record."[1] *Id.*, subd. 7(d)(5). Substantial evidence is "(1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; or (5) the evidence considered in its entirety." *Dourney v. CMAK Corp.*, 796 N.W.2d 537, 539 (Minn. App. 2011) (quoting *Minn. Ctr. for Env't Advoc. v. Minn. Pollution Control Agency*, 44 N.W.2d 457, 466 (Minn. 2002)). We review the ULJ's factual findings in the light most favorable to the decision and defer to the ULJ's credibility determinations. *Peterson v. Nw. Airlines Inc.*, 753 N.W.2d 771, 774 (Minn. App. 2008), *rev. denied* (Minn. Oct. 1, 2008).

An employee is ineligible for unemployment benefits if they were "discharged because of employment misconduct." Minn. Stat. § 268.095, subd. 4(1) (2024). "Employment misconduct means any intentional, negligent, or indifferent conduct, on the job or off the job, that is a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee." *Id.*, subd. 6(a) (2024). But "employment misconduct" excludes "simple unsatisfactory conduct"; "absence because of illness or injury of the applicant, with proper notice to the employer"; and "absence, with proper notice to the employer, in order to provide necessary care because of the illness, injury, or disability of an immediate family member of the applicant." *Id.*, subd. 6(b)(3), (7)-(8) (2024). "Whether an employee's absenteeism and tardiness amounts to a serious violation

---

[1] We construe Xiong's brief to argue that the ULJ's decision was unsupported by substantial evidence. Although he does not use that phrase, he argues that the evidence before the ULJ would support a conclusion that he did not engage in employment misconduct.

of the standards of behavior an employer has a right to expect depends on the circumstances of each case." *Stagg v. Vintage Place Inc.*, 796 N.W.2d 312, 316 (Minn. 2011).

Based on our review of the record, there is substantial evidence that Quality Extrusion discharged Xiong for attendance-related employment misconduct. Much of the evidence is from the manager's testimony, whom the ULJ found credible. We defer to ULJ's credibility determination. *Peterson*, 753 N.W.2d at 774. The manager testified that Xiong was discharged because he was "just not being here. We're a small company. We can't have that." He expressed that he "really liked having [Xiong] working here, but we only have three or four guys per shift, so dependability is very important." At a meeting in July 2024, Quality Extrusion addressed that Xiong had "missed a few days already" and told him that he needed to improve his attendance. After Xiong missed three consecutive days the week following that meeting, Quality Extrusion "knew [it] had to make a change." Xiong also acknowledged that his attendance was "kind of an issue" and that his discharge related to his attendance. And Xiong affirmed that none of his attendance issues were "due to sickness or anything like that." Rather, his absences were attributable to his arrest and unreliable access to transportation. Considering the circumstances, there is substantial evidence in the record that Xiong was reasonably expected to attend his scheduled shifts, and Xiong's repeated absences seriously violated the standards of behavior that Quality Extrusion reasonably expected of him.

To persuade us otherwise, Xiong maintains that he followed company procedure by reporting his absence or tardiness each time it occurred, and he was fired merely because he was a probationary employee. These arguments are unavailing.

6

The record does not support Xiong's assertion that his absences did not constitute employment misconduct. Xiong's brief alleges that his supervisors excused his absences. But those statements were not before the ULJ, so we cannot consider them. *See Ward v. Delta Airlines*, 973 N.W.2d 649, 653 (Minn. App. 2022) (citing *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988)) (declining to review issues not raised before the ULJ), *rev. denied* (Minn. June 21, 2022). And statements by supervisors that appear in the hearing transcript do not suggest that Xiong was excused from work. Xiong stated, "I also called in other times, and even prior, like I talked to them after it was good, but then I kept in communication with them . . . at all times." And when Xiong's girlfriend talked to the manager to report that Xiong would miss work because he was in jail, Xiong testified that the manager told the girlfriend that Xiong was "okay." These statements do not suggest that Quality Extrusion excused Xiong from his scheduled shifts, especially when weighed against the testimony conveying that attendance was expected.

The record also does not support that Xiong was let go merely for being a probationary employee. Xiong does not point to anything in the record to support his assertion, other than testimony establishing that he was, in fact, a probationary employee. And the manager testified that Xiong was discharged because of "repeated attendance issues during his probationary period" and for no other reasons. Again, we defer to the ULJ's determination that the manager's testimony was credible. The manager's testimony supplies substantial, unrebutted evidence that Quality Extrusion discharged Xiong for his attendance issues.

For these reasons, we conclude that the ULJ's determination that Xiong was discharged for employment misconduct is supported by substantial evidence in the record. We therefore see no basis to upend the ULJ's decision that Xiong did not qualify for unemployment benefits.

**Affirmed.**